**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**

| | |
|---|---|
| MACOMB COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MASSEY ENERGY COMPANY, DON L. BLANKENSHIP, BAXTER F. PHILLIPS, JR., ERIC B. TOLBERT, RICHARD M. GABRYS, LADY BARBARA THOMAS JUDGE, DAN R. MOORE, JAMES B. CRAWFORD, ROBERT H. FOGLESONG and STANLEY C. SUBOLESKI,<br><br>Defendants. | Civil Action No. 5:10-cv-00689<br><br>MEMORANDUM IN SUPPORT OF THE MOTION OF THE MEE INVESTOR GROUP TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL |
| FIREFIGHTERS' RETIREMENT SYSTEM OF LOUISIANA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MASSEY ENERGY COMPANY, DON L. BLANKENSHIP, BAXTER F. PHILLIPS, JR., ERIC B. TOLBERT, DAN R. MOORE, E. GORDON GEE, RICHARD M. GABRYS, JAMES B. CRAWFORD, ROBERT H. FOGLESONG, STANLEY C. SUBOLESKI, LADY BARBARA THOMAS JUDGE, and J. CHRISTOPHER ADKINS,<br><br>Defendants. | Civil Action No. 5:10-cv-00776 |

**INTRODUCTION**

The MEE Investor Group,[1] a small, cohesive group of 3 members, submits this memorandum in support of its motion: (1) to consolidate, pursuant to Fed. R. Civ. P. 42, the related securities class actions[2] brought on behalf of all persons who purchased or otherwise acquired the publicly-traded securities of Massey Energy Company ("Massey" or the "Company") between February 1, 2008 and May 16, 2010, inclusive (the "Class Period")[3]; (2) to be appointed Lead Plaintiff in these Actions pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by Section 101(b) of the PSLRA; and (3) for approval of its selection of the law firm of Brower Piven, A Professional Corporation ("Brower Piven"), as Lead Counsel for the Class and The Giatras Law Firm, PLLC ("Giatras, PLLC") as Liaison Counsel for the Class.

As described in the Consolidated Schedule of Transactions and Losses for the MEE Investor Group attached to the Declaration of Troy N. Giatras in Support of the Motion of the MEE Investor Group to Consolidate Related Actions; to be Appointed Lead Plaintiff; and to Approve Proposed Lead Plaintiff's Choice of Counsel ("Giatras Decl."), at Exhibit B, the MEE Investor Group has suffered a loss of approximately $1,041,480.90 as a result of its members' purchases of shares of Massey during the Class Period. To the best of its knowledge, the MEE Investor Group has sustained the largest loss of any investor seeking to be appointed Lead

---

[1] The MEE Investor Group consists of Brian D. Goe, Mohammad T. Hashemi, and Justin Dubler.

[2] The related securities class actions in this Court include the following cases: *Macomb County Employees' Retirement System v. Massey Energy Co., et al.*, 5:10-cv-00689 (S.D. W. Va.; filed on Apr. 29, 2010) (the "*Macomb* Action"); and *Firefighters' Retirement System of Louisiana v. Massey Energy Co., et al.*, 5:10-cv-00776 (S.D. W. Va.; filed on May 28, 2010) (the "*Firefighters* Action") (collectively, the "Action(s)").

[3] This is the longest class period alleged in the Actions, which is the class period in the *Firefighters* Action. The *Macomb* Action's class period is October 28, 2009 and April 21, 2010, inclusive.

Plaintiff in these Actions.

In addition to demonstrating the largest financial interest in the outcome of this litigation, the MEE Investor Group's members' Certifications evidence their intent to serve as Lead Plaintiff in this litigation, including their cognizance of the duties of serving in that role.[4] The members of the MEE Investor Group fully understand their duties and responsibilities to the Class, and are willing and able to oversee the vigorous prosecution of these Actions. As provided in the individual Declarations of the members of the MEE Investor Group, the MEE Investor Group members have conferred with each other, are aware of their responsibilities for serving as Lead Plaintiff in these Actions, and have agreed to coordinate their efforts throughout the course of this litigation. *See* Giatras Decl., Exhibit C. Moreover, the members of the MEE Investor Group satisfy both the applicable requirements of the PSLRA and Fed. R. Civ. P. 23, and the MEE Investor Group is presumptively the "most adequate plaintiff."

**PROCEDURAL BACKGROUND**

Two related cases alleging substantially identical claims for similar classes of purchasers of Massey's securities are pending in this Court. The first of these Actions, the *Macomb* Action, was filed on April 29, 2010. Thereafter, one additional Action, the *Firefighters* Action, was filed in this Court alleging the same or similar claims.

Pursuant to 15 U.S.C. §78u-4(a)(3)(A)(i), on April 29, 2010, the first notice that a class action had been initiated against Defendants was published on *Business Wire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of

[4] The PSLRA authorizes any member or group of members of the putative Class seeking to be appointed Lead Plaintiff to either file a complaint or move for appointment as Lead Plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). Copies of the MEE Investor Group's members' Certifications reflecting their transactions in Massey during the Class Period are attached as Exhibit A to the Giatras Declaration.

their right to move the Court to serve as Lead Plaintiff no later than 60 days from the notice (June 28, 2010). *See* Giatras Decl., Exhibit D.

The members of the MEE Investor Group are members of the Class (*see* Giatras Decl., Exhibit A) and they have timely moved within the 60 day period following publication of the April 29, 2010 notice as required for appointment as Lead Plaintiff under the PSLRA.

**SUMMARY OF THE ALLEGATIONS**[5]

Massey is one of the largest coal producers in the United States and the largest coal company in Central Appalachia, its primary region of operation, in terms of tons produced and total coal reserves. The Company operates 56 mines – including 42 underground mines and 14 surface mines—in West Virginia, Kentucky, and Virginia.

On April 5, 2010, an explosion rocked Massey's Upper Big Branch mine ("UBB"), killing 29 workers in one of the worst-ever mining incidents in the U.S. ("the "Explosion"). UBB is located in Raleigh County, West Virginia, and is owned by a Massey subsidiary, called Performance Coal Company ("Performance Coal"). The Explosion was so powerful that it bent and twisted the steel rail tracks in UBB. Safety experts opine that the Explosion was caused by: (a) high levels of flammable coal dust; and (b) concentrated levels of methane in the air.

Massey's top executives and Board of Directors (the "Board") were well aware of the fatal conditions at UBB, but deliberately and recklessly disregarded them in the name of the Company's "profits-at-all-costs" corporate philosophy. Indeed, over the past three years, UBB's operations were cited by federal safety inspectors hundreds of times for dangerous violations of regulations – including the volatile buildup of explosive methane and coal dust, the reported causes of the Explosion. The U.S. Mine Safety and Health Administration ("MSHA") cited

[5] The Summary of the Allegations is taken from the *Firefighters* Complaint.

UBB for a total of 515 safety violations in 2009 alone.

Moreover, Massey's Board was expressly informed of the Company's deliberate disregard for safety regulations prior to the Class Period, and at least as early as June 13, 2007. That day, two Board members—Daniel S. Loeb ("Loeb") and Todd Q. Swanson ("Swanson") – sent a joint letter of resignation to the Board (the "Resignation Letter"). The Resignation Letter was prompted by "the Company's confrontational handling of environmental and [safety] regulatory matters." In the Resignation Letter, Loeb and Swanson noted: "[C]orrectible deficiencies combine to maintain a 'Blankenship Discount' in the market price for Massey's shares, and do a grave disservice to shareholders . . . . We cannot stand by while the Board fails to address these [safety] concerns."

Notwithstanding the Resignation Letter and the hundreds of safety violations at UBB, during the Class Period, the Company claimed to be one of the safest mine operators in the industry. Massey regularly touted its safety achievements and told investors that "Safety is job one." Contrary to this representation and others like it, Massey is one of the worst offenders of safety regulations in the mining industry.

After the Explosion, when the market came to understand the circumstances that caused it, the price of Massey's securities fell $9.47, more than 17 percent, over the next two days. The marketplace also learned after the Explosion that UBB is not the only Massey mine with a litany of safety violations, citations, and fines. In fact, three other Massey mines are among the top 20 worst mines in the nation based on the number of "significant and substantial" violations (violations likely to result in reasonably serious injury or illness). In addition, in 2009, ten of Massey's coal mines had injury rates that exceeded the national average. Miners in four of those

mines, including UBB, were injured at rates more than double the national average. The ten mines together received 2,400 federal safety violation citations in 2009.

On April 30, 2010, it was disclosed that the Federal Bureau of Investigation ("FBI") was investigating Massey for bribery of state and federal mine inspectors. At least two dozen Massey employees, federal and state officials, and mine union members have been interviewed by FBI agents. As a result of this news, Massey's stock fell $4.53 per share, or 11 percent, to $36.63 on April 30, 2010. On May 14, 2010, federal prosecutors from the U.S. Attorney's Office for the Southern District of West Virginia confirmed that Justice Department officials are investigating possible "willful criminal activity" by Massey subsidiary Performance Coal and its "directors, officers, and agents" for alleged violations of federal mine safety regulations at UBB between 2007 and 2010. As a result of this news, Massey stock fell from $37.00 on May 14, 2010 to a new low of $33.29, or 10 percent, on May 17, 2010.

## ARGUMENT

### I. THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS

Consolidation of securities class actions is appropriate where, as here, the actions involve common questions of law and fact. Both the Federal Rules of Civil Procedure (*see* FED. R. CIV. P. 42(a))[6] and the PSLRA provide for consolidation of related actions brought under the federal securities laws. Section 21D(a)(3)(B)(iii) of the Exchange Act addresses the issue of consolidation of related securities actions:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the Court shall not make the determination [of appointment of lead plaintiff] until after the decision on the motion to consolidate is rendered . . . .

[6] *See* Fed. R. Civ. P. 42(a): "Consolidation. If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions."

*See* 15 U.S.C. §78u-4(a)(3)(B)(ii).

The related Actions are suited for consolidation. The class action complaints are all brought by purchasers of Massey securities against similar Defendants. The complaints contain similar allegations charging Defendants with making false and misleading statements, and omitting material information. While district courts have significant discretion in determining the propriety of consolidation, they have recognized that consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and/or reports. *See In re Royal Ahold N.V. Sec. & Erisa Litig.*, 219 F.R.D. 343, 348 (D. Md. 2003); *Zaltzman v. Manugistics Group, Inc.*, No. 98-1881, 1998 U.S. Dist. LEXIS 22867, at *5 (D. Md. Oct. 8, 1998). Differences between particular defendants, damages, and/or class periods do *not* defeat the appropriateness of consolidation for federal securities cases based upon the same underlying facts. *See In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000). Therefore, this Court should consolidate the related Actions.

## II. THE MEE INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

### A. The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a strict, detailed procedure for the selection of the Lead Plaintiff to oversee a securities class action. *See* 15 U.S.C. §78u-4(a)(3). First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the proposed class informing class members of their right to file a motion for appointment as Lead Plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(A)(i). Plaintiff in the first-filed *Macomb* Action published a notice on *Business Wire* on April 29, 2010. *See* Giatras Decl., Exhibit D.[7] This notice indicated that

[7] *Business Wire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See*

applications for appointment as Lead Plaintiff were to be made no later than 60 days from the date of the press release, which would be June 28, 2010. Within 60 days after publication of the required notice, any member or members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §78u-4(a)(3)(A) and (B).

Next, the PSLRA requires that within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be the most capable of adequately representing the interests of Class Members. *See* 15 U.S.C. §78u-4(a)(3)(B)(i). In making this determination, the statute directs the Court to the following objective criteria:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice . . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

### B. The MEE Investor Group Is "The Most Adequate Plaintiff"

#### 1. The MEE Investor Group Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff

The MEE Investor Group moves this Court to be appointed Lead Plaintiff and has timely filed the instant Motion to be appointed Lead Plaintiff within the 60-day time period

---

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, No. 02-8264, 2004 U.S. Dist. LEXIS 9571, at *20 (S.D.N.Y. May 27, 2004).

requirement. The plaintiff in the first-filed action published notice on *Business Wire*, a national business-oriented wire service, on April 29, 2010. Accordingly, the MEE Investor Group meets the requirements of 15 U.S.C. §78u-4(a)(3)(A) and (B) and has filed its motion by June 28, 2010.

Moreover, the MEE Investor Group has sustained a loss of approximately $1,041,480.90 from its investment in Massey's securities. Further, the members of the MEE Investor Group have shown their willingness to represent the Class by signing sworn Certifications detailing their investments in Massey during the Class Period and confirming their willingness to discharge the obligations of class representatives in these Actions. *See* Giatras Decl., Exhibit A. Additionally, each member of the MEE Investor Group has signed a Declaration (*see* Giatras Decl., Exhibit C) demonstrating that they intend to consult with counsel on a regular basis and direct their counsel and the course of the litigation.

Small cohesive groups like the MEE Investor Group have routinely been appointed as Lead Plaintiff in securities class actions when they have shown the Court their ability to effectively manage the litigation. *Schulman v. Lumenis, Ltd.*, 02-1989, 2003 U.S. Dist. LEXIS 10348, at *21-22 (S.D.N.Y. June 18, 2003); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001); *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 217 (D.D.C. 1999); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 44-46 (S.D.N.Y. 1998) (allowing three lead plaintiffs and holding that "the plain language of the PSLRA expressly contemplates the appointment of more than one lead plaintiff"). Thus, to determine whether a putative "group" meets the definition of a "group" under the PSLRA, the court's "singular focus will be whether the asserted group has demonstrated the ability to effectively manage the litigation in the interests of the class and direct the litigation without undue influence of counsel." *In re Versata, Inc. Sec. Litig.*, No. 01-1439,

2001 U.S. Dist. LEXIS 24270, at *21-22 (N.D. Cal. Aug. 20, 2001). Therefore, the MEE Investor Group should be appointed Lead Plaintiff in these Actions.

In addition, the MEE Investor Group has selected and retained highly competent counsel with significant experience in securities class action litigation and other litigation to represent the Class. The firm resumes of proposed Lead Counsel, Brower Piven, and proposed Liaison Counsel, Giatras, PLLC, are attached as Exhibits E and F, respectively, to the Giatras Declaration.

**2. The MEE Investor Group Has the Largest Financial Interest**

According to 15 U.S.C. §78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant who has the largest financial interest in the relief sought by the action. As demonstrated herein, the MEE Investor Group, with losses of approximately $1,041,480.90, has the largest known financial interest in the relief sought by the Class. *See* Giatras Decl., Exhibit B.

**3. The MEE Investor Group Satisfies the Requirements of Rule 23**

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) generally requires that the claims of representative parties be typical of the claims of the class and that the representatives will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23. As detailed below, the MEE Investor Group satisfies the typicality and adequacy requirements of Rule 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until

the Lead Plaintiff moves for class certification. *See Haung v. Acterna Corp.*, 220 F.R.D. 255, 259 (D. Md. 2004)

As detailed below, the MEE Investor Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff. The MEE Investor Group has claims that are typical of those of other Class members and can adequately serve as Lead Plaintiff.

**i. The MEE Investor Group's Claims Are Typical of the Claims of All the Class Members**

The MEE Investor Group has claims that are typical of those of other Class members. Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other class members or when the claims are based on the same legal theory. *See Royal Ahold,* 219 F.R.D. 343 at 350. The requirement that a proposed class representative's claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Ferrari v. Impath*, No. 03-cv-5667, 2004 U.S. Dist. LEXIS 13898, at *18 (S.D.N.Y. July 15, 2004).

In this case, the typicality requirement is met because the claims of the members of the MEE Investor Group are identical to, and non-competing and non-conflicting with the claims of the other Class members. The MEE Investor Group and all of the Class members purchased Massey securities and suffered damages as a result of these purchases due to Defendants' misrepresentations and omissions. Therefore, the MEE Investor Group's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise." *Oxford Health*, 182 F.R.D. at 50. The MEE Investor Group is not subject to any unique or

special defenses. Thus, the MEE Investor Group meets the typicality requirement of Fed. R. Civ. P. 23 because its claims are the same as the claims of the other Class members.

**ii. The MEE Investor Group Will Adequately Represent the Class**

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B).

The MEE Investor Group's interests are clearly aligned to those of the other members of the Class. Not only is there no evidence of antagonism between the members of the MEE Investor Group and the other Class members, but the members of the MEE Investor Group have a significant, compelling interest in prosecuting the Actions to a successful conclusion based upon the very large financial losses each of its members has suffered as a result of the wrongful conduct alleged in the Actions. This motivation, combined with the MEE Investor Group's identical interest with the members of the Class, demonstrates that the MEE Investor Group will vigorously pursue the interests of the Class. In addition, the MEE Investor Group has selected law firms to represent it and the Class that are highly experienced in litigating securities class actions and other litigation.

In sum, because of the MEE Investor Group's common interests with the Class members, its clear motivation and ability to vigorously pursue these Actions, and its competent counsel, the adequacy requirement of Fed. R. Civ. P. 23(a)(3) and (4) are met. Therefore, because the MEE Investor Group not only meets both the typicality and adequacy requirements of Rule 23(a) and has sustained the largest amount of losses from Defendants' alleged wrongdoing, the MEE

Investor Group is the presumptive Lead Plaintiff in accordance with 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), and it should be appointed as such to lead these Actions.

## III. THE COURT SHOULD APPROVE THE MEE INVESTOR GROUP'S CHOICE OF COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). The MEE Investor Group has selected Brower Piven and Giatras, PLLC to serve as Lead Counsel and Liaison Counsel, respectfully, for the Class. Brower Piven has not only prosecuted complex securities fraud actions, but have also successfully prosecuted many other types of complex class actions as lead and/or class counsel. *See* Giatras Decl., Exhibit E. In addition, Giatras, PLLC is a respected law firm, and it has extensive litigation experience. *See* Giatras Decl., Exhibit F. This Court may be assured that in the event the MEE Investor Group's Motion is granted, the members of the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all of the foregoing reasons, the MEE Investor Group respectfully requests that this Court enter an order: (1) consolidating all related Actions; (2) appointing the MEE Investor Group to serve as Lead Plaintiff; (3) approving the MEE Investor Group's selection of Lead Counsel and Liaison Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

Dated: June 28, 2010

Respectfully submitted,

**THE GIATRAS LAW FIRM, PLLC**

*/s/ Troy N. Giatras*
Troy N. Giatras (WVSB #5602)
118 Capital St., Suite 400
Charleston, WV 25301
Telephone: (304) 343-2900
Facsimile: (304) 343-2942

*Counsel for the MEE Investor Group and Proposed Liaison Counsel for the Class*

**BROWER PIVEN**
A Professional Corporation
David A.P. Brower
488 Madison Avenue
Eighth Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

**BROWER PIVEN**
A Professional Corporation
Charles J. Piven
1925 Old Valley Road
Stevenson, Maryland 21153
Telephone: (410) 332-0030
Facsimile: (410) 685-1300

*Counsel for the MEE Investor Group and Proposed Lead Counsel for the Class*