# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA
# AT BECKLEY

| | |
|---|---|
| MACOMB COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>vs.<br><br>MASSEY ENERGY COMPANY, DON L. BLANKENSHIP, BAXTER F. PHILLIPS, JR., ERIC B. TOLBERT, RICHARD M. GABRYS, LADY BARBARA THOMAS JUDGE, DAN R. MOORE, JAMES B. CRAWFORD, ROBERT H. FOGLESONG and STANLEY C. SUBOLESKI,<br><br>                Defendants. | No. 5:10-cv-00689<br><br>Hon. Irene C. Berger |
| FIREFIGHTERS' RETIREMENT SYSTEM OF LOUISIANA, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>v.<br><br>MASSEY ENERGY COMPANY, DON L. BLANKENSHIP, BAXTER F. PHILLIPS, JR., ERIC B. TOLBERT, DAN R. MOORE, E. GORDON GEE, RICHARD M. GABRYS, JAMES B. CRAWFORD, ROBERT H. FOGLESONG, STANLEY C. SUBOLESKI, LADY BARBARA THOMAS JUDGE, and J. CHIRSTOPHER ADKINS,<br><br>                Defendants. | No. 5:10-cv-00776<br><br>Hon. Irene C. Berger |

**MEMORANDUM OF LAW IN SUPPORT OF WAYNE COUNTY EMPLOYEES' RETIREMENT SYSTEM'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL**

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

I.      PROCEDURAL BACKGROUND........................................................................ 2

II.     STATEMENT OF FACTS .................................................................................... 2

III.    OVERVIEW OF APPLICABLE LAW................................................................ 6

IV.    THE ACTIONS SHOULD BE CONSOLIDATED ............................................. 7

V.     THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF FOR THE CLASS .................................................................................................................. 8

        A.     Movant's Motion to Serve as Lead Plaintiff Is Timely .......................... 8

        B.     Movant Is Believed to Have the Largest Financial Interest in the Relief Sought by the Class........................................................................... 9

        C.     Movant Satisfies the Typicality and Adequacy Requirements of Rule 23 ........... 10

            1.     Movant's Claims Are Typical of the Claims of the Class..............................11

            2.     Movant Will Fairly and Adequately Represent the Interests of the Class.................................................................................................12

VI.    THE COURT SHOULD APPROVE MOVANT'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL ............................................................................... 12

VII.   CONCLUSION................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases** **Pages**

*A/S J. Ludwig Mowinckles Rediri v. Tidewater Const. Corp.*,
 559 F.2d 928 (4th Cir. 1997) ................................................................................................ 7

*Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001) ................................................................................................ 10

*In re Cree, Inc., Secs. Litig.*,
 219 F.R.D. 369 (M.D. N.C. 2003) ................................................................................. 10, 11

*Arnold v. Eastern Air Lines, Inc.*,
 681 F.2d 186 (4th Cir. 1982) ................................................................................................ 7

*Harris v. L&L Wings, Inc.*,
 132 F.3d 978 (4th Cir. 1977) ............................................................................................ 7, 8

*Lax v. First Merchs. Acceptance Corp.*,
 No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) .............................................. 10

*Miller v. Dyadic Int'l, Inc.*,
 No. 07-80948, 2008 WL 2465286 (S.D. Fla. Apr. 18, 2008) ............................................... 9

*In re Mills Corp.*,
 No. Civ. A.1:06-77, 2006 WL 2035391 (E.D. Va. May 30, 2006) ............................... 10, 11

*Mobley v. Smithkline Beecham Corp.*,
 2:08-cv-01192, 2009 WL 1327466 (S.D. W.Va. May 12, 2009) ...................................... 7, 8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
 229 F.R.D. 395 (S.D.N.Y. 2004) .................................................................................. 10, 11

*In re Royal Ahold N.V. Secs. and ERISA Litig.*,
 219 F.R.D. 343 (D. Md. 2003) ...................................................................................... 10, 11

*In re Star Gas Secs. Litig.*,
 No. 3:04 cv 1766, 2005 WL 818617 (D. Conn. Apr. 8, 2005) ............................................. 9

*In re USEC Secs. Litig.*,
 168 F. Supp. 2d 560 (D. Md. 2001) .................................................................................... 11

**Statutes**

15 U.S.C. § 78u-4 ........................................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 23 .................................................................................................................. 7, 10, 11

Fed. R. Civ. P. 42(a) ..................................................................................................................... 7, 8

Movant Wayne County Employees' Retirement System ("Movant") respectfully submits this memorandum of law in support of its motion for: (i) consolidation of the Actions (defined below); (ii) appointment of Movant as Lead Plaintiff in the Actions; and (iii) approval of Movant's selection of Lead Counsel and Liaison Counsel for the putative class.  Movant has purchased shares in Massey Energy Company ("Massey" or the "Company").[1]

## PRELIMINARY STATEMENT

Currently pending before the Court are two securities class Actions against Massy and certain of the Company's officers and directors (collectively, "Defendants").  These Actions allege violations of §§ 10(b) and 20 of the Securities Exchange Act of 1934 (the "Exchange Act").[2]  Consolidating the Actions is appropriate because each involves common factual and legal issues.  This Court should also appoint Movant as Lead Plaintiff for the class.  First, Movant's motion to be appointed Lead Plaintiff is timely under the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  Movant is also the "most adequate" to serve as Lead Plaintiff.  In fact, Movant satisfies each of the PSLRA's requirements for appointment as Lead Plaintiff.  At this time, Movant believes that it has the "largest financial interest" in the relief sought by the class, having lost approximately $55,519 through its purchase of publicly traded Massey securities.  Movant's claims against Defendants are also typical of the claims of other

---

[1]     Movant has submitted a certification attesting to its willingness to serve as a representative of the class and listing its transactions in shares of Massey common stock.  (*See* Exhibit A to the Declaration of Richard A. Speirs in Support of its Motion for Consolidation, Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel and Liaison Counsel, dated June 28, 2010 (the "Speirs Decl.").

[2]     The Actions are *Macomb County Employees' Retirement System, et al. v. Massey Energy Company, et al.,* 5:10-cv-00689 ("*Macomb*") and *Firefighters' Retirement System of Louisiana, et al. v. Massey Energy Company, et al.,* 05:10-cv-00776 ("*Louisiana Firefighters*") (together, the "Actions").

class members, and its interests are aligned with the interests of the class. Finally, Movant has retained qualified counsel and will vigorously prosecute the Actions.

## I. PROCEDURAL BACKGROUND

The *Macomb* and *Louisiana Firefighters* Actions were filed, respectively, on April 29, 2010, and May 28, 2010. The *Macomb* action was the first case to publish notice, as required under the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(i)(II), of a class action against Defendants. That notice was published on April 29, 2010. *See* Speirs Decl. Ex. B. Therefore, the deadline for the instant motion is July 28, 2010. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) (lead plaintiff motion must be filed within sixty days after the publication of the class action notice). On May 28, 2010, the *Louisiana Firefighters* Action was assigned to the calendar of Judge Irene C. Berger as a case related to *Macomb*. Defendants have not moved to dismiss or answered the complaints filed in either of the Actions.

## II. STATEMENT OF FACTS

Massey is a coal company that operates in West Virginia, Kentucky and Virginia and which claims to be the largest in Central Appalachia. (¶ 10.)[3] During the class period,[4] Massey repeatedly represented to the public and its investors that the Company was deeply committed to safety issues and that its operations were extremely safe. (¶ 2.) (*Id.*) However, on April 5, 2010, an explosion at Massey's Upper Big Branch mine in West Virginia revealed the falsity of Massey's representations. (¶ 2.) After that mine accident, the deadliest in the United States in nearly 40 years, the public learned of scores of undisclosed and uncorrected safety violations at

---

[3] "¶" references are to allegations in the complaint filed in the *Macomb* Action.

[4] The complaint filed in the *Macomb* Action sets forth a class period of October 28, 2009 to April 21, 2010, inclusive. The complaint filed in the *Louisiana Firefighters* Action sets forth a class period of February 1, 2008 to May 16, 2010, inclusive.

Massey mines and of the Company's disregard for safety more generally. Upon the revelation of these facts, Massey's stock price plunged, wiping out hundreds of millions of market capitalization.

According to the *Macomb* Complaint, on October 28, 2009, the Company issued a press release which touted Massey's receipt of three Federal Mine Safety and Health Administration ("MSHA") safety awards. (¶ 34.) In the press release, the Company described a commitment to safety that was purportedly unparalleled in the industry. Massey stated, "[W]e embrace our commitment to safety at all levels – from executive to miner. … 2008 marked the safest year in Massey history . . . In fact, Massey's safety performance has been stronger than the industry average of 16 for the past 18 years." (*Id.*) The Company also conducted a conference call in which Massey President Baxter F. Phillips referred to the MSHA safety awards and stated, "We are very proud of this accomplishment and our members who work so hard to make Massey's mines among the safest in the industry." (¶ 36.)

Also on October 28, 2009, Massey filed with the Securities and Exchange Commission ("SEC") its Form 10-Q for the third quarter period ending September 30, 2009. Massey's Form 10-Q reported the Company's financial results for the quarter, but failed to disclose ongoing and uncorrected safety violations at the Company's mines, including at the Upper Big Branch mine. Instead, the SEC filing described risks to Massey's business through generic warnings and boilerplate statements concerning health and safety requirements. (¶¶ 37-39.)[5]

On February 2, 2010, Massey issued a press release that reported the Company's financial results for the fiscal year 2009. (¶ 41.) In the release, the Company reported net

---

[5] As noted in footnote 4, the *Louisiana Firefighters* Action alleges that the Company's false and misleading statements began on February 1, 2008. *See Louisiana Firefighters* Complaint ¶1.

income of $24.4 million and coal revenue of $498.7 million for the fourth quarter of 2009. Massey also reported that it "completed the safest year in Company history by achieving a non-fatal days lost (NFDL) incident rate of 1.67 in the full year 2009." (*Id.*) Massey President Phillips also described a company-wide dedication to safety, "Safety has long been our top priority. Many of our operations worked the entire year without a single lost time incident. (*Id.*)

On February 3, 2010, Massey held a conference call to discuss the Company's 2009 financial results. (¶ 42.) In the call, Massey President Phillips again described the Company's purported commitment to safety and the safety record of its operations, stating, "[W]e are extremely proud of our accomplishments in improving the safety of our members in our operations during 2009. …. We continue to make significant investments of time, personnel and capital to ensure that our mines are as safe as they can be and achieving this record low rate is a reflection of that commitment." (*Id.*)

On March 1, 2010, Massey filed with the SEC its report on Form 10-K for the fiscal year 2009 ending December 31, 2009. (¶ 43.) Like its third-quarter filing, Massey's 2009 Form 10-K failed to disclose information regarding ongoing and uncorrected regulatory violations at Massey mines, including at the Upper Big Branch mine. Instead, it described risks to the Company's business through generic warnings and boilerplate statements concerning mine health and safety requirements. (*Id.*) During the month of March 2010, Massey also issued a press release and filed a Prospectus and Registration Statement regarding an acquisition of Cumberland Resources Corporation and affiliated companies ("Cumberland"). (¶¶ 46-51.) In these documents, Massey also stressed its purported high safety standards and its safety record. (¶ 48.)

After the April 5, 2010 explosion at Massey's Upper Big Branch mine, the public learned that the Company's representations regarding its commitment to safety and its safety record were

false. The public also learned that Massey had received numerous citations arising from serious uncorrected safety and other regulatory violations at its mines in West Virginia and neighboring states which the Company had failed to disclose.

In fact, virtually immediately after the Upper Big Branch Mine accident, investigators identified the cause of the explosion as unvented methane gas, resulting from the Company's disregard for safety. On April 6, 2010, MSHA administrator Kevin Stricklin stated to *The Wall Street Journal*, "An explosion wouldn't have happened if [the mine] was operating safely." (¶ 56.) J. Davitt McAteer, head of MSHA during the Clinton Administration, stated in a report by the Associated Press, "There are mines who take precautions ahead of time. There are mines who [sic] spend the money and manpower to do it. Those mines haven't been blown up." (¶ 2.)

Several media outlets reported that the Upper Big Branch mine had more than 3,000 regulatory violations over the past 15 years, including 600 in the year preceding the Upper Big Branch accident, leading to more than $900,000 in fines. (¶ 57.) The citations also included violations for failing to properly control methane levels. According to MSHA's website, 35 of the violations at the Upper Big Branch mine were deemed significant and substantial, such that each was "reasonably likely to result in a reasonably serious injury or illness." (¶ 3.) On April 15, 2010, reports of additional safety violations surfaced when federal inspectors identified more than 60 serious safety violations at Massey's operations. (¶ 58.) Subsequent articles in other news publication continued to report on Massey violations and serious problems with safety matters. (¶ 60.)

When the public learned of the falsity of Massey's public statements and SEC filings, and the truth concerning the Company's safety violations and disregard for safety, and the share price of Massey stock plunged. (¶ 4.) Massey's stock price fell by more than 17% in the two days

following the Upper Bring Branch accident, falling $9.47 and causing a loss of over $800 million in market capitalization. (*Id.*)  On April 21, 2010, federal mine safety officials conducted surprise inspections at eight Massey mines. (¶ 5.)  After the market closed that day, Massey announced its first quarter earnings and told investors that it would take up to $150 million in charges in the second quarter to account for the potential costs and liabilities associated with the Upper Big Branch explosion. (*Id.*)  The next day, on April 22, 1010, Massey's stock price fell to as low as $41.30 per share before closing at $42.93 per share, a one day drop of nearly 2%. (*Id.*)  As a result, Massey's investors lost hundreds of millions of dollars.

The *Macomb* and *Louisiana Firefighters* complaints assert two causes of action under the Exchange Act: (1) a claim under Section 10(b) against all Defendants and (2) a claim under Section 20 against the officer and director defendants for control person liability.

### III.   OVERVIEW OF APPLICABLE LAW

The PSLRA sets forth the procedure for appointing the lead plaintiff in a securities class action.  The first step requires providing notice to members of the putative class of the pendency of a class action, the claims asserted, and the purported class period.  Specifically, the PSLRA provides that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class--
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Following issuance of the appropriate notice, the PSLRA requires consolidation of all

6

related cases before selecting a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). The requirements for selection of a lead plaintiff to oversee class actions brought pursuant to the federal securities laws are set forth in 15 U.S.C. § 78u-4(a)(3)(B). There is a rebuttable presumption that the "most adequate plaintiff" to serve as lead plaintiff is "the person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to [the aforementioned] notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As set forth below, Movant satisfies each of the PSLRA's statutory requirements to serve as Lead Plaintiff here.

## IV.   THE ACTIONS SHOULD BE CONSOLIDATED

When multiple actions asserting substantially the same claims on behalf of a class have been filed, a court must first decide the consolidation motion and then decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Movant has filed a motion to consolidate the pending actions pursuant to Rule 42(a).

Consolidation of actions pursuant to Fed. R. Civ. P. 42(a) is appropriate when the actions involve common questions of law and fact. *Harris v. L&L Wings, Inc.,* 132 F.3d 978, 982 fn. 2 (4th Cir. 1977); *Mobley v. Smithkline Beecham Corp.,* 2:08-cv-01192, 2009 WL 1327466 at *1 (S.D. W.Va. May 12, 2009). Under Rule 42(a), this Court has broad discretion to determine whether consolidation is appropriate. *A/S J. Ludwig Mowinckles Rediri v. Tidewater Const. Corp.,* 559 F.2d 928, 933 (4th Cir. 1997). It is well recognized that consolidation benefits both the courts and the parties by avoiding inconsistent adjudications of factual and legal issues, conserving judicial resources and minimizing burdens on parties. *See Mobley,* 2009 WL

1327466 at *1 (*citing Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982)).

The complaints filed in the Actions are substantially similar but for differing class periods. Both complaints allege the same set of core facts concerning the Defendants' misrepresentations and omissions of material facts which induced reasonable investors to misjudge the value of Massey's stock. Both name the same Defendants and both allege violations of the same federal securities statute: Sections 10(b) and 20 of the Exchange Act. As a result, this Court should consolidate the Actions and any related actions that are filed subsequent to this motion. *See Harris,* 132 F.3d at 982, fn. 2; *Mobley,* 2009 WL 1327466 at *1.

Following consolidation, the selection of a lead plaintiff and lead counsel is the necessary first step to begin prosecution of the Actions. The PSLRA contemplates a ninety-day period from the early notice publication to the selection of a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). Because the PSLRA explicitly ties the selection of a lead plaintiff to the consolidation of related actions, Movant respectfully requests that this Court grant the consolidation motion as soon as practicable. A prompt determination is reasonable and warranted under Fed. R. Civ. P. 42(a).

## V. THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF FOR THE CLASS

The PSLRA provides guidelines for the appointment of a lead plaintiff in each private action arising under Securities Act "that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). Because Movant is the "most adequate" plaintiff, as defined by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii), it should be appointed as Lead Plaintiff for the class.

### A. Movant's Motion to Serve as Lead Plaintiff Is Timely

Within sixty days after the publication of a notice of a class action, any person or group

of persons that is a member of the proposed class may move the Court to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Here, the earliest notice of a class action regarding Defendants was published on April 29, 2010. (*See* Speirs Decl. Ex. B.) While this notice (which pertains to the *Macomb* Action) identifies a class period from October 28, 2009 through April 21, 2010, inclusive (*see id.*), the complaint filed in *Louisiana Firefighters* Action identifies a larger class period, *i.e.*, February 1, 2008 through May 16, 2010, inclusive. (*See Supra* fn. 4). Below, Movant calculated its financial interest based on the larger class period set forth in the *Louisiana Firefighters'* complaint.[6] As a purchaser of common stock in Massey, Movant is a member of the proposed class and has timely moved for appointment as Lead Plaintiff within sixty days of the notice, in compliance with the PSLRA. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Movant therefore satisfies the PSLRA's initial requirement.[7]

### B. Movant Is Believed to Have the Largest Financial Interest in the Relief Sought by the Class

Pursuant to the PSLRA, this Court should next determine which lead plaintiff applicant has the "largest financial interest" in the relief sought by the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The PSLRA does not specify the method by which an applicant's financial interest should be calculated, nor has the Supreme Court articulated such a method. *See*

---

[6] The larger class period of the *Louisiana Firefighters* complaint will likely be used in a consolidated class action complaint. Courts also typically select the lead plaintiff movant on the largest financial interest calculated for the most inclusive class period. *Miller v. Dyadic Int'l, Inc.*, No. 07-80948, 2008 WL 2465286, at *4 (S.D. Fla. Apr. 18, 2008). *See also In re Star Gas Secs. Litig.*, No. 3:04 cv 1766, 2005 WL 818617, at *7 (D. Conn. Apr. 8, 2005) (class period identified in the first-filed notice does not control the lead-plaintiff determination).

[7] The PSLRA does not require a movant to have filed a complaint against the Defendants. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) (instructing that the most adequate plaintiff will have *either* filed the complaint or made a motion for appointment as lead plaintiff).

*In re Royal Ahold N.V. Secs. and ERISA Litig.*, 219 F.R.D. 343, 349 (D. Md. 2003). Generally, courts have considered the following factors to determine a movant's financial interest: "(1) the number of shares purchased during the [putative] class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Id*. (*citing Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001)). *See also Lax v. First Merchs. Acceptance Corp.,* No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).

Movant believes at this time that it has the "largest financial interest" in the relief sought by the class. During the class period identified in the *Louisiana Firefighters'* complaint, Movant purchased 24,550 shares of Massey common stock for a total of approximately $1,182,616 and suffered losses of approximately $55,519 as a result of those purchases. (*See* Speirs Decl. Exs. A, C.)  Given its significant financial interest, Movant believes that it satisfies the PSLRA's second requirement for appointment as Lead Plaintiff.

Pursuant to the PSLRA, the movant with the greatest financial interest is *presumptively* the "most adequate" to serve as Lead Plaintiff. *See In re Mills Corp.,* No. Civ. A.1:06-77, 2006 WL 2035391 at *3 (E.D. Va. May 30, 2006) (appointing movant with the "largest financial losses" as lead plaintiff); *In re Cree, Inc., Secs. Litig.,*, 219 F.R.D. 369, 371 (M.D. N.C. 2003) (same). Once the movant with the largest financial interest is determined, the inquiry ends and the Court must look no further at the other lead plaintiff candidates, unless the adequacy and typicality of the presumptive lead plaintiff is rebutted. *See Mills,* 2006 WL 2035391, at *3; *Cree*, 219 F.R.D. at 371.

### C. Movant Satisfies the Typicality and Adequacy Requirements of Rule 23

In addition to meeting the PSLRA's requisites set forth above, a lead plaintiff must also

satisfy the requirements of Fed. R. Civ. P. 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

    (1) the class is so numerous that joinder of all members is impracticable;

    (2) there are questions of law or fact common to the class;

    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

For purposes of appointing a lead plaintiff, a wide-ranging analysis under Fed. R. Civ. P. 23 is not appropriate.  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004).  All that is required is a "prima face" showing that the proposed lead plaintiff will satisfy the requirements of typicality and adequacy.  *See Cree,* 219 F.R.D. at 372.  *See also In re USEC Secs. Litig.*, 168 F. Supp. 2d 560, 566 (D. Md. 2001) (only a "preliminary" showing is required).  As discussed below, Movant satisfies both the typicality and adequacy requirements of Rule 23(a), further supporting its appointment as Lead Plaintiff.

    1.  Movant's Claims Are Typical of the Claims of the Class

Pursuant to Fed. R. Civ. P. 23(a), the claims or defenses of the representative party must be typical of those of the class.  Typicality exists when claims "arise from the same course of events, and each class member's claim makes similar legal arguments to prove the defendant's liability."  *Mills*, 2006 WL 2035391 at *4.  *See also Royal Ahold*, 219 F.R.D. at 350.  The claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality. *Pirelli Armstrong Tire Corp. Retiree Med. Ben. Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 412

(S.D.N.Y. 2004)

Movant satisfies the typicality requirement of Fed. R. Civ. P. 23(a). Movant's claims and the class' claims arise from damages sustained due to the same alleged course of conduct by Defendants who made public misrepresentations and omissions regarding Massey. Movant and the class members also assert the same violations of federal securities laws.

### 2. Movant Will Fairly and Adequately Represent the Interests of the Class

Under Fed. R. Civ. P. 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." "Adequate representation requires a finding that the purported class representative and its attorney are capable of pursuing the litigation and that neither has a conflict of interest with other class members." *Cree*, 219 F.R.D. at 371. *See also Royal Ahold*, 219 F.R.D. at 350.

Movant's interests are aligned with – and certainly are not antagonistic to – the interests of the other class members. Movant, like the other class members, is a victim of Defendants' alleged misconduct and sustained damages as a result thereof. Due to its significant financial stake in the Actions, interest in prosecuting the Actions, and choice of proposed Lead Counsel, Movant will vigorously prosecute the claims against Defendants and protect the interests of the class.

## VI. THE COURT SHOULD APPROVE MOVANT'S CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL

Pursuant to the PSLRA, the lead plaintiff is permitted, subject to the Court's approval, to select and retain counsel to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(v). Movant has selected and retained Zwerling, Schachter & Zwerling, LLP ("Zwerling, Schachter") and Pyles & Turner, LLP ("Pyles Turner") to represent it and the putative class as Lead Counsel and Liaison Counsel, respectively. Zwerling, Schachter has extensive experience in the areas of securities

class action litigation and other complex litigation, and has been responsible for significant successful results on behalf of injured investors in numerous securities class action lawsuits, as well as legal decisions that enable litigation such as this to be successfully prosecuted. (*See* Speirs Decl. Ex. D.) As demonstrated by the *curriculum vitae* for Bradley J. Pyles, Lead Plaintiff has also selected qualified Liaison Counsel. (*See* Speirs Decl. Ex. E).

## VII. CONCLUSION

For the above reasons, Movant respectfully requests that the Court: (1) consolidate the Actions; (2) grant its motion for appointment as Lead Plaintiff; and (3) approve its choice of Zwerling, Schachter as Lead Counsel and Pyles Turner as Liaison Counsel for the putative class.

Dated: June 28, 2010

                                              Respectfully submitted,

                                              **PYLES & TURNER, LLP**

                                              By:  s/   Bradley J. Pyles
                                                    408 Main Street
                                                    Logan, WV 25601 -3908
                                                    Telephone: (304) 752-6000
                                                    Facsimile: (304) 752-2050
                                                    brad.pyles@cphtlogan.com

                                              *Proposed Liaison Counsel*

                                              **ZWERLING, SCHACHTER
                                                    &amp; ZWERLING, LLP**
                                              Richard A. Speirs
                                              Stephen L. Brodsky
                                              41 Madison Avenue, 32nd Floor
                                              New York, NY 10010
                                              Telephone: (212) 223-3900
                                              Facsimile: (212) 371-5969
                                              rspeirs@zsz.com
                                              sbrodsky@zsz.com

                                              *Proposed Lead Counsel for Lead Plaintiff Movant Wayne County Employees' Retirement System and the Class*