**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | |
|---|---|
| In re MASSEY ENERGY CO. SECURITIES LITIGATION | CIVIL ACTION NO. 5:10-cv-00689 |

**MASSEY ENERGY COMPANY AND THE OUTSIDE DIRECTOR DEFENDANTS'
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL LIFT OF THE PSLRA DISCOVERY STAY**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

FACTS ............................................................................................................................................. 2

ARGUMENT ................................................................................................................................... 3

I.      PLAINTIFFS HAVE NOT ESTABLISHED THAT ANY EXCEPTION TO THE
        PSLRA'S MANDATORY STAY PROVISION APPLIES. ................................................ 3

        A.      Plaintiffs Have Not Established that a Partial Lift of the Stay Is Necessary
                to Prevent Undue Prejudice to Them. ..................................................................... 5

        B.      Plaintiffs Have Not Established that a Partial Lift of the Stay Is Necessary
                to Preserve Evidence. .............................................................................................. 8

        C.      Plaintiffs' Claims Are Precisely of the Type the PSLRA Is Designed to
                Deter. ........................................................................................................................ 9

        D.      The Burden on Defendants of Lifting the Stay—Which Is Substantial—
                Cannot Justify Granting Plaintiffs' Motion ........................................................... 12

        E.      In Any Event, Plaintiffs' Proposed Discovery Is Not Sufficiently
                Particularized. ........................................................................................................ 13

II.     THOUGH UNNECESSARY, DEFENDANTS DO NOT OBJECT TO
        PLAINTIFFS' REQUEST TO ISSUE PRESERVATION SUBPOENAS TO
        MASSEY SUBSIDIARIES. .............................................................................................. 15

CONCLUSION .............................................................................................................................. 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*380544 Canada, Inc. v. Aspen Technology, Inc.*,
  No. 07 Civ. 1204 (JFK), 2007 U.S. Dist. LEXIS 51920
  (S.D.N.Y. July 18, 2007) ...........................................................................4, 6, 10

*In re Am. Funds Sec. Litig.*,
  493 F. Supp. 2d 1103 (C.D. Cal. 2007) ........................................................14

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  MDL-1500, 2003 U.S. Dist. LEXIS 12846 (S.D.N.Y. July 21, 2003).....................................5

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
  No. 09-MDL 2058 (DC), 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009) ..............................10

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988)......................................................................................11

*In re Carnegie Intern. Corp. Sec. Litig.*,
  107 F. Supp. 2d 676 (D. Md. 2000).............................................................3, 4

*In re CFS-Related Sec. Fraud Litig.*,
  179 F. Supp. 2d 1260 (N.D. Okla. 2001).....................................................5, 6

*In re Cree, Inc. Sec. Litig.*,
  220 F.R.D. 443 (M.D.N.C. 2004) ....................................................................4

*In re Elan Corp. Sec. Litig.*,
  No. 02 Civ. 865 (RMB) (FM), 2004 WL 1303638 (S.D.N.Y. May 18, 2004)...................5, 12

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
  No. MDL-1446, 2002 U.S. Dist. LEXIS 26261 (S.D. Tex. Aug. 16, 2002) .......................8, 10

*In re Fannie Mae Sec. Litig.*,
  362 F. Supp. 2d 37 (D.D.C. 2005) ..............................................................5, 14

*Faulkner v. Verizon Communications, Inc.*,
  156 F. Supp. 2d 384 (S.D.N.Y. 2001)..........................................................5, 9

*In re LaBranche Sec. Litig.*,
  333 F. Supp. 2d 178 (S.D.N.Y. 2004)..........................................................7, 8

*Mishkin v. Ageloff*,
  220 B.R. 784 (S.D.N.Y. 1998)........................................................................4

*In re Odyssey Healthcare, Inc.*,
   No. Civ.A.3:04-CV-0844-N, 2005 WL 1539229 (N.D. Tex. June 10, 2005) ..........................6

*Podany v. Robertson Stephens, Inc.*,
   350 F. Supp. 2d 375 (S.D.N.Y 2004)......................................................................................4

*Raab v. Gen. Physics Corp.*,
   4 F.3d 286 (4th Cir. 1993) ....................................................................................................11

*Ross v. Abercrombie & Fitch Co.*,
   No. 2:05-cv-0819, 2006 WL 2869588 (S.D. Ohio Oct. 5, 2006) ...........................................12

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   220 F.R.D. 246 (D. Md. 2004)...........................................................................................8, 10

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
   No. 03-cv-3120 (LTS), 2005 U.S. Dist. LEXIS 23905 (S.D.N.Y. Oct. 14, 2005) ...................6

*Sisk v. Guidant Corp.*
   No. 1:05-cv-01658-SEB-WTL, 2007 WL 1035090 (S.D. Ind. March 30, 2007)................6, 7

*In re Spectranetics Corp. Sec. Litig.*,
   No. 08-cv-02048-REB-KLM, 2009 WL 3346611 (D. Colo. Oct. 14, 2009)...........................7

*In re Sunrise Senior Living, Inc. Deriv. Litig.*,
   584 F. Supp. 2d 14 (D.D.C. 2008) ..........................................................................6, 7, 9, 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)................................................................................................................4

*In re Tyco Int'l Ltd. Multidistrict Litig.*,
   No. 02-MD-1335-B, 2003 WL 23830479 (D.N.H. Jan. 29, 2003)........................................10

*In re Vivendi Universal, S.A. Sec. Litig.*,
   381 F. Supp. 2d 129 (S.D.N.Y. 2003)......................................................................................8

*Waldman v. Wachovia Corp.*,
   No. 08 Civ 2913, 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009).................................................8

*In re WorldCom Sec. Litig.*,
   234 F. Supp. 2d 301 (S.D.N.Y. 2002)..................................................................................7, 8

**Statutes & Rules**

15 U.S.C. § 78u-4(b)(3)(B)................................................................................................3, 4

15 U.S.C. § 78u-4(b)(3)(C)(i)...............................................................................................15

**Other Authorities**

United States Department of Labor, Mine Safety and Health Administration,
   http://www.msha.gov/drs/drshome.htm (last visited Mar. 6, 2011) ........................................12

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679...............................................3, 9

Defendants James B. Crawford, E. Gordon Gee, Robert H. Foglesong, Richard M. Gabrys, Lady Barbara Thomas Judge, Dan R. Moore and Stanley C. Suboleski (collectively, the "Outside Director Defendants") and Massey Energy Company ("Massey" or the "Company" and, together with the Outside Director Defendants, the "Defendants") respectfully submit this memorandum of law in opposition to Lead Plaintiff Commonwealth of Massachusetts Pension Reserves Investment Trust and Plaintiff David Wagner's (together, the "Plaintiffs") Motion for Partial Lift of the PSLRA Discovery Stay.

## PRELIMINARY STATEMENT

In the present motion, Plaintiffs, before they have even served their Consolidated Amended Complaint in this action, ask this Court to ignore the mandate of the PSLRA so that they might gain early access to documents that Defendants have produced, or will produce, to the government and other private litigants.  Such a result would directly thwart Congress's intended approach—that securities plaintiffs not be granted access to discovery, even discovery already had by others, until after the legal sufficiency of their claims is upheld on a motion to dismiss, subject to two very limited exceptions.  Notably, Plaintiffs devote much of their briefing to factors not directly relevant to whether either of the two statutory exceptions—undue prejudice or the need to preserve evidence—applies in this case.  When they do address the statutory exceptions, Plaintiffs offer nothing more than a claim that they risk "falling behind" government investigations (without articulating any specific prejudice resulting therefrom) and a charge that there is a danger of evidence being destroyed because the FBI is investigating whether a page from a "Fireboss Book" at the Upper Big Branch Mine was improperly removed (without addressing that all the documents they are requesting already are or will be in the hands of government agencies and various law firms).  This is hardly the type of showing required to lift the PSLRA stay.

Indeed, upholding the mandate of the PSLRA takes on particular importance, where, as here, Plaintiffs have not yet even filed their Consolidated Amended Complaint (scheduled to be served March 11, 2011) or briefed their opposition to Defendants' contemplated motions to dismiss.  The timing of Plaintiffs' motion thus reveals it as a transparent maneuver to evade the PSLRA's prohibition on using discovery to attempt to formulate a claim—either now or upon a subsequent attempted amendment—where none otherwise exists.  Plaintiffs' effort to avoid the result that Congress intended should therefore be denied.

Finally, on March 3, 2011, the United States Attorney moved to stay discovery in this action until the conclusion of the criminal investigations and proceedings that are ongoing with respect to Massey.  That motion, if granted, will moot Plaintiffs' motion.  Moreover, it reinforces that not lifting the PSLRA stay is in the public interest.

## FACTS

On April 5, 2010, a tragic explosion at Massey's Upper Big Branch Mine ("UBB") near Montcoal, West Virginia claimed the lives of 29 miners.  In the wake of that explosion, numerous government authorities initiated investigations of Massey and its personnel to determine the root causes of the accident.  There is no indication whatsoever that any of those investigations concerns asserted violations of federal or state securities laws, and there is no indication that the SEC is investigating or intends to investigate Massey for possible securities fraud.  Indeed, aside from the two complaints filed in this consolidated action, Defendants are aware of no other litigant or investigative body, public or private, that has asserted such claims.

The complaints in this matter were filed on April 29, 2010, and May 28, 2010, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 based on Defendants' alleged misstatements and omissions regarding Massey's safety record.  On January 10, 2011, this Court issued a stipulated order consolidating the two actions and appointing as

lead plaintiff the Commonwealth of Massachusetts Pension Reserves Investment Trust.  On

February 2, 2011, this Court approved a stipulated scheduling order requiring Plaintiffs to serve a

Consolidated Amended Complaint ("CAC") by March 11, 2011.  Pursuant to that order,

Defendants have until April 25, 2011 to move to dismiss or otherwise respond to the CAC.

Defendants have indicated their intention to move to dismiss the CAC.

Defendants have cooperated, and continue to cooperate, fully in the ongoing

governmental investigations.  To date, Massey has produced in excess of 445,000 pages of

documents in those investigations and related private litigations.  Those documents are now the

subject of Plaintiffs' motion to lift the PSLRA stay.

**ARGUMENT**

## I.   PLAINTIFFS HAVE NOT ESTABLISHED THAT ANY EXCEPTION TO THE PSLRA'S MANDATORY STAY PROVISION APPLIES.

The stay provision of the Private Securities Litigation Reform Act of 1995

("PSLRA"), which Plaintiffs concede applies to this case (*see* Mem. at 1)[1], mandates that "all

discovery and other proceedings shall be stayed during the pendency of any motion to dismiss".

15 U.S.C. § 78u-4(b)(3)(B).  The legislative history indicates that the impetus behind this and

other provisions of the PSLRA was the desire to deter the filing of strike suits alleging violations

of the federal securities laws, which "are often based on nothing more than a company's

announcement of bad news, not evidence of fraud".  *See In re Carnegie Int'l. Corp. Sec. Litig.*,

107 F. Supp. 2d 676, 679 (D. Md. 2000) (citing S. Rep. No. 104-98, at 4 (1995), *reprinted in*

1995 U.S.C.C.A.N. 679, 683).  By staying discovery during the pendency of a motion to dismiss,

---

[1]   References to "Mem. at __" are to the February 16, 2011, Memorandum of Law in
Support of the Motion of Lead Plaintiff Commonwealth of Massachusetts Pension Reserves
Investment Trust and Plaintiff David Wagner for Partial Lift of the PSLRA Discovery Stay.

the PSLRA ensures that defendants are not induced to settle such actions quickly simply to avoid the expense of litigation, *id.*, and deters the filing of complaints "as a vehicle in order to conduct discovery in the hopes of finding a sustainable claim[] not alleged in the complaint", *380544 Canada, Inc. v. Aspen Tech., Inc.*, No. 07 Civ. 1204 (JFK), 2007 U.S. Dist. LEXIS 51920, at *6-*8 (S.D.N.Y. July 18, 2007) (internal citation omitted).

The PSLRA stay provision also applies where, as here, there has been an "indication by [the] defense of its intention to file a motion to dismiss". *Carnegie*, 107 F. Supp. 2d at 683; *see also* Mem. at 13 (noting briefing schedule for "Defendants' expected motions to dismiss"). The stay bars "all discovery" against parties and non-parties alike. *See In re Cree, Inc. Sec. Litig.*, 220 F.R.D. 443, 446 (M.D.N.C. 2004). In sum, the statute mandates that "no discovery should take place until a court has affirmatively decided that [the] complaint does state a claim". *Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y 2004).[2]

To justify even partially lifting the mandatory stay, a plaintiff must establish the applicability of one of two limited exceptions: that the requested discovery is necessary (1) "to preserve evidence" or (2) "to prevent undue prejudice to that party". 15 U.S.C. § 78u-4(b)(3)(B). Furthermore, even if a plaintiff can make that showing, the PSLRA, by its terms, permits the stay to be lifted only to the extent that the plaintiff seeks "particularized discovery". *Id.*; *see also Mishkin v. Ageloff*, 220 B.R. 784, 792-93 (S.D.N.Y. 1998) (holding that the statutory term "particularized discovery" modifies both the "preserve evidence" and "undue prejudice" requirements). Plaintiffs here fail to make the required showing on all counts.

---

[2]   It is worth noting that in determining whether Plaintiffs' CAC states a claim, the Court will need to apply the heightened pleading standard set forth in the PSLRA. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007).

4

A.    **Plaintiffs Have Not Established that a Partial Lift of the Stay Is Necessary to Prevent Undue Prejudice to Them.**

Plaintiffs fail to establish that they will suffer undue prejudice if the stay is not lifted.  Although the PSLRA does not define "undue prejudice", it has been construed to mean "improper or unfair treatment rising to a level somewhat less than irreparable harm".  *Faulkner v. Verizon Communications, Inc.*, 156 F. Supp. 2d 384, 402 (S.D.N.Y. 2001) (citation omitted). In determining whether a plaintiff has made the requisite showing, it is important to bear in mind that the statutory scheme, by its nature, contemplates that securities plaintiffs will suffer *some* prejudice by virtue of the stay.  Thus, it is Plaintiffs' burden to demonstrate that theirs is the "exceptional circumstance" that requires deviation from the general rule.  *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL-1500, 2003 U.S. Dist. LEXIS 12846, at *6-7 (S.D.N.Y. July 25, 2003) ("Lead Plaintiff has not demonstrated that exceptional circumstances are present in this case requiring production of documents previously produced to various government agencies . . . ."); *see also In re CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d 1260, 1265 (N.D. Okla. 2001) ("Prejudice caused by the delay inherent in the PSLRA's discovery stay cannot be 'undue' prejudice because it is prejudice which is neither improper nor unfair.  Rather, it is prejudice which has been mandated by Congress after a balancing of the various policy interests at stake in securities litigation[.]").  That burden has been held to be "a heavy one".  *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 38 (D.D.C. 2005).

Plaintiffs argue that denying them evidence that the government and other parties have, and will obtain, regarding their claims will unduly prejudice them.  (Mem. at 11.)  But courts repeatedly have held that the mere fact that Plaintiffs will not have access to documents already produced to other parties does not itself establish "undue prejudice".  *See In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865 (RMB) (FM), 2004 WL 1303638 at *1 (S.D.N.Y. May 18,

2004) ("[T]he [PSLRA] does not provide an exception to the mandatory stay when the documents sought have already been produced outside the litigation"); *see also 380544 Can.*, 2007 U.S. Dist. LEXIS 51920, at *5 (same); *Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03-cv-3120 (LTS), 2005 U.S. Dist. LEXIS 23905, at *15 (S.D.N.Y. Oct. 14, 2005) (same); *In re Odyssey Healthcare, Inc. Sec. Litig.*, No. Civ.A.3:04-CV-0844-N, 2005 WL 1539229, at *2 (N.D. Tex. June 10, 2005) ("[Such a] rationale, if accepted, would effectively result in a structural, or at least categorical, exception to the discovery stay that is neither apparent nor discernible from § 78u-4(b)(3)(B)."). That a securities plaintiff is not able to obtain discovery at the same pace as other litigants and government agencies is an inherent feature of the statutory scheme; indeed, it is the fundamental aspect of the PSLRA's mandatory stay provision. It cannot, therefore, establish "undue prejudice". *See In re Sunrise Senior Living, Inc. Deriv. Litig.*, 584 F. Supp. 2d 14, 18 (D.D.C. 2008) ("[I]t is unlikely that such contemporaneous investigations and their possible impact on parties in private litigation escaped the awareness of Congress. Nonetheless, the plain language of the PSLRA requires *undue* prejudice.") (emphasis in original); *see also Sisk v. Guidant Corp.* No. 1:05-cv-01658-SEB-WTL, 2007 WL 1035090, at *4 (S.D. Ind. Mar. 30, 2007) ("[T]his circumstance is not exceptional, and does not prejudice Plaintiffs in an unfair manner outside the policy considerations inherent in the PSLRA.").

In order to show *undue* prejudice, Plaintiffs must articulate how their lack of access to the previously produced documents prejudices them in a way distinct from what the statute inherently demands. *See In re CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d at 1265. Plaintiffs do not do this. Instead, they offer pleas to the effect that they risk "falling behind" other litigants and government agencies. But those other litigants and government agencies are not even investigating or asserting securities fraud claims. For example, the DOJ and MSHA

investigations appear to focus on allegations regarding inadequate health and safety practices at Massey mines.  (Bernstein Decl. Exs. 4, 6.)  This alone distinguishes this case from all of the cases of concurrent government investigations upon which Plaintiffs rely in their brief.  *See, e.g.*, *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 183 (S.D.N.Y. 2004) ("In this case, the SEC and NYSE investigated and are continuing to investigate the precise schemes alleged by Lead Plaintiffs in the Complaint.").  In any event, simply "falling behind" those other proceedings— without any corresponding articulable consequence—is insufficient to establish undue prejudice. *Sisk*, 2007 WL 1035090, at *4 ("Plaintiffs worry that they will be 'left behind' if other parties are privy to discovery while they are not, and that the 'shifting legal landscape' to which they repeatedly refer will leave them at a disadvantage if the stay is not lifted.  These conditions, as described, do not amount to undue prejudice against Plaintiffs.").

To the extent that some courts have ordered the PSLRA stay lifted as to documents already produced to other litigants or government agencies, there were exceptional circumstances resulting in demonstrable prejudice to the securities plaintiffs beyond that which is inherent in the PSLRA stay.  Generally, "undue prejudice occurs when 'multiple parties [are] vying for a piece of a limited pie, and plaintiffs would be at a serious disadvantage' without the requested discovery".  *In re Spectranetics Corp. Sec. Litig.*, No. 08-cv-02048-REB-KLM, 2009 WL 3346611, at *5 (D. Colo. Oct. 14, 2009) (quoting *In re Sunrise Senior Living,* 584 F. Supp. 2d at 18).  For example, in *In re WorldCom Inc. Securities Litigation*, 234 F. Supp. 2d 301 (S.D.N.Y. 2002), upon which Plaintiffs rely, the court partially lifted the stay to avoid prejudice to the plaintiffs in the "unique" circumstance of court-ordered global settlement discussions, where the securities plaintiffs were effectively competing with other litigants for WorldCom's

then-very-limited funds.[3]  *Id.* at 305-06; *see also In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 130-31 (S.D.N.Y. 2003) (distinguishing *WorldCom* because court found "no evidence that plaintiffs face the same prospect, as in Worldcom . . . that they would be left without remedy in light of settlement discussions or other intervening events, such as bankruptcy").  Plaintiffs do not allege anything approaching those unique circumstances here. Indeed, the various investigations of Massey have little to no bearing on Plaintiffs' claims.  For example, if MSHA were to conclude its investigation into the causes of the UBB disaster before the mandatory stay were lifted in the ordinary course, there would simply be no effect at all on Plaintiffs' ability to prosecute their claims.

**B.     Plaintiffs Have Not Established that a Partial Lift of the Stay Is Necessary to Preserve Evidence.**

Plaintiffs also contend that in light of Massey's planned merger with Alpha Natural Resources, Inc. ("Alpha"), lifting the PSLRA stay is "necessary to preserve evidence". "A party alleging that discovery is 'necessary to preserve evidence' must . . . make a specific showing that the loss of evidence is imminent as opposed to merely speculative."  *In re Vivendi Universal*, 381 F. Supp. 2d at 130 (internal quotations omitted).  Notably, "the sole example proffered by Congress as to what justifies lifting the stay on this ground is the terminal illness of an important witness, which might necessitate the deposition of the witness prior to ruling on the

---

[3]     Similarly exceptional circumstances existed in the other cases relied upon by Plaintiffs. For example, in *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, No. MDL-1446, 2002 U.S. Dist. LEXIS 26261, at *29 (S.D. Tex. Aug. 16, 2002), the defendant company was in bankruptcy and, in *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 251 (D. Md. 2004), the company was in the process of divesting itself piecemeal of key corporate subsidiaries.  Likewise, in both *Waldman v. Wachovia Corporation*, No. 08 Civ. 2913 (SAS), 2009 WL 86763, at *2 (S.D.N.Y. Jan. 12, 2009), and *In re LaBranche*, 333 F. Supp. 2d at 184, defendants had already entered into a settlement with regulators that would provide some compensation to the class, and the court deemed discovery necessary to allow plaintiffs to evaluate whether to continue to pursue their claims or to seek an early settlement.

motion to dismiss". *Faulkner*, 156 F. Supp. 2d at 402 (quoting S. Rep. No. 104-98, 14 (1995),

*reprinted in* 1995 U.S.C.C.A.N. 679, 693) (internal quotation marks omitted).  Plaintiffs do not

come close to making the required showing.

Indeed, in the circumstances of this case, Plaintiffs assertion that lifting the stay is

necessary to preserve evidence is simply illogical.  By their own admission, Plaintiffs' request is

limited to materials that previously have been produced to the government or other private

litigants.  As such, those materials would all be in the possession of *both* the agencies or litigants

who received them and the law firms who made the productions on Massey's behalf.  Thus, even

the most tumultuous of circumstances at the Company could not create a danger that those

materials would be lost or destroyed.  *See In re Sunrise Senior Living,* 584 F. Supp. 2d at 18 ("As

the defendants point out, '[the plaintiffs'] evidence-preservation argument is illogical because the

documents that [the plaintiffs] are requesting have already been produced to someone else and

thus, by definition, they have not been and could not be destroyed.'")  To the extent there has

been any allegation of possible document tampering, the partial lift of the stay requested by

Plaintiffs would not address those circumstances.

> **C.    Plaintiffs' Claims Are Precisely of the Type the PSLRA Is Designed to Deter.**

To the extent Plaintiffs contend that the PSLRA stay should be lifted because

their claims are "far from unmeritorious" and their motion therefore "does not implicate any of

the Congressional concerns underlying the stay of discovery under the PSLRA" (*see* Mem. at 3,

12), their reasoning is flawed in several ways.  First, by its plain terms, the applicability of the

PSLRA stay is not limited to "frivolous" claims.  Discovery is stayed in all actions until "after

the court has sustained the legal sufficiency of the complaint".  S. Rep. No. 104-98, 14 (1995),

*reprinted in* 1995 U.S.C.C.A.N. 679, 693.  Thus, at this point in the process, even a meritorious

claim cannot justify lifting the mandatory stay if plaintiffs fail to establish one of the two

statutory exceptions—undue prejudice or a need to preserve evidence.  *See 380544 Canada,* 2007 U.S. Dist. LEXIS 51920, at *6 ("[T]he mere fact that the PSLRA's goals would not be frustrated by the lifting of the stay . . . is not sufficient to warrant lifting the stay.").

Second, a review of Plaintiffs' claims reveals that they are devoid of any merit and, indeed, are precisely the types of claims that the PSLRA was designed to deter.  Plaintiffs assert that "it is clear from the numerous government investigations that this Action is far from unmeritorious".  (Mem. at 3.)  But this contention fails for the simple reason that, as noted above, those ongoing investigations, while related in some ways to the issues in this case, do not concern the same claims that Plaintiffs make in this securities action.  The investigations by the FBI, DOJ, MSHA and others appear to focus on asserted violations of mining safety regulations, which, even if proven, would not indicate whether Plaintiffs here can succeed on their claims that the Defendants violated the securities laws by making material misrepresentations to Massey's investors regarding the company's safety record.  Thus, this case is distinguishable from cases upon which Plaintiffs rely—such as *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, No. 09-MDL 2058 (DC), 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009), *Royal Ahold*, 220 F.R.D. 246, *In re Tyco Int'l Ltd. Multidistrict Litig.*, No. 02-MD-1335-B, 2003 WL 23830479 (D.N.H. Jan. 29, 2003), *Enron*, 2002 U.S. Dist. LEXIS 26261, and others—where securities claims were asserted in parallel with SEC or other governmental investigations into the very same issues, which lent some credibility to the securities plaintiffs' claims.

Besides the fact that the ongoing investigations offer little support to Plaintiffs' allegations, their claims suffer from an even more crucial infirmity.  Plaintiffs purport to bring securities fraud claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 to recover losses they sustained when Massey's share price declined in the wake of the UBB mine

explosion on April 5, 2010.[4]  According to Plaintiffs' theory of liability, the price of Massey

stock was artificially inflated at the time they purchased their shares before the UBB explosion

because the price did not reflect information about Massey's "chronically poor safety record",

which information Defendants allegedly failed to disclose to the market.  (Compl. ¶¶ 46, 78.)  To

establish their reliance on the alleged misrepresentations and omissions, Plaintiffs rely on the

fraud-on-the-market rebuttable presumption (*id.* ¶ 81), which is premised on the notion that the

stock's "market price has internalized all publicly available information".  *Raab v. Gen. Physics

Corp.*, 4 F.3d 286, 289 (4th Cir. 1993).  But the presumption "cuts both ways".  *Id.*  That is, if the

information that Plaintiffs claim was hidden is in fact publicly available, Plaintiffs' fraud-on-the-

market theory fails.  *Id.*; *see also Basic, Inc. v. Levinson*, 485 U.S. 224, 248-49 (1988)

(presumption of fraud rebutted when market has access to accurate information).  That is

precisely the case here.

Massey's safety record is—and was throughout the relevant period—a matter of

public record.  Indeed, Plaintiffs rely on public data from the United States Mine Safety and

Health Administration ("MSHA") in the complaint to illustrate Massey's allegedly "severe and

systemic non-compliance with mine safety laws" prior to the UBB mine explosion.  (Compl.

¶ 70; *see also id.* ¶¶ 3, 6, 11, 39, 42-45.)  This information was publicly available prior to the

UBB mine explosion and throughout the relevant period from MSHA, which maintains an online

Data Retrieval System, updated daily, that reflects all violations, citations and fines it issues to

---

[4]   Because Plaintiffs have not yet filed a consolidated amended complaint, our discussion of
their claims necessarily assumes that the allegations in the forthcoming consolidated amended
complaint will be similar to those made in the Firefighters' Retirement System of Louisiana's
Complaint for Violations of the Federal Securities Laws, filed on May 28, 2010, to which
Plaintiffs refer in their brief (Mem. at 1 n.1).  Accordingly, all references to "Compl. ¶ __" herein
are to that complaint.

mining operators.  *See* United States Department of Labor, Mine Safety and Health

Administration, http://www.msha.gov/drs/drshome.htm (last visited Mar. 6, 2011).  Thus, the

market price at the time of Plaintiffs' purchases already internalized this information, and the

Defendants' alleged failure to disclose it cannot form the basis of a claim of securities fraud.

Therefore, even if the merit of Plaintiffs' claims were relevant to consideration of whether to lift

the PSLRA stay—and it is not—that factor would weigh heavily against lifting the stay.

> **D.** **The Burden on Defendants of Lifting the Stay—Which Is Substantial—**
> **Cannot Justify Granting Plaintiffs' Motion**

Plaintiffs also contend that the stay should be lifted because, they claim,

Defendants would not be unduly burdened by responding to the proposed discovery requests.

Even assuming that, as Plaintiffs contend, "the burden [of producing the requested documents] is

close to nil" (Mem. at 9), this does not satisfy the PSLRA's requirements for lifting the stay.

Indeed, the PSLRA nowhere cites the burden to the defendant as a relevant consideration in

determining whether to lift the stay; the focus instead is on the moving party, who must establish

that lifting the stay is necessary to prevent undue prejudice or to preserve evidence.  *See In re*

*Sunrise Senior Living*, 584 F. Supp. 2d at 17 ("[A] stay under the PSLRA cannot be lifted absent

a showing of undue prejudice or a need to preserve evidence, even if lifting the stay may cause

little to no burden on a defendant to produce the requested documents."); *see also Ross v.*

*Abercrombie & Fitch Co.*, No. 2:05-cv-0819, 2006 WL 2869588, at *2 (S.D. Ohio Oct. 5, 2006)

("Congress did not decree that discovery would be permitted . . . if certain circumstances arose

which would make the discovery either less burdensome to the defendants than ordinary

discovery or, perhaps, not burdensome at all.  Rather, the focus of the statutory language is on

the need either to preserve evidence . . . or to prevent undue prejudice . . . ."); *In re Elan Corp.*,

2004 WL 1303638, at *1 (rejecting plaintiffs' contention "that the stay should be lifted because

the Defendants will not suffer an undue burden" because "even if true, [it] does not justify overriding the existing statutory stay"). Where, as here, a plaintiff fails to establish either of the two statutory exceptions, the stay must remain in place regardless of the burden on defendants that production would entail.

In any event, Plaintiffs grossly underestimate the burden their proposed discovery will impose on Defendants. While Plaintiffs' brief misleadingly implies that they seek *all* documents that Massey has produced to regulators and private litigants and that Defendants merely have to "mak[e] another copy for [P]laintiffs" (Mem. at 10), their actual request (*see* Bernstein Decl. Ex. 15) demonstrates otherwise. What Plaintiffs actually seek is "[a]ll Documents concerning the safety of all Massey mines . . . that You have produced to, [or] will produce to" the government and other private litigants. (Bernstein Decl. Ex. 15.) Thus, if the stay is lifted, Massey will have to re-review each of the over 445,000 pages of its production in order to determine whether such documents "concern[] the safety of all Massey mines", "including, but not limited to documents concerning" 19 enumerated subcategories. (*Id.*) Thus, unless Plaintiffs are willing to pay the fees for a team of attorneys to conduct this review, the burden on Defendants in terms of both time and cost would be substantial. Therefore, even if the burden on Defendants were relevant to determining whether to lift the stay, it would not weigh in favor of doing so.

**E.    In Any Event, Plaintiffs' Proposed Discovery Is Not Sufficiently Particularized.**

Plaintiffs claim that their proposed discovery is sufficiently particularized because "Plaintiffs are requesting discovery related to an identifiable universe of documents—*i.e.*, those documents already produced . . . in the several government investigations and private actions [in

which Defendants are currently involved]".  (Mem. at 8-9.)  This contention fails for a number of reasons.

<u>First</u>, Plaintiffs broadly seek *all* documents concerning the safety of Massey mines produced in the investigations and other litigations, without making any attempt to limit discovery to those documents viewed by or otherwise relevant to the scienter of the Defendants on Plaintiffs' securities fraud claims.

<u>Second</u>, because Plaintiffs' request includes documents that Massey "will produce" to regulators and other private litigants in the future (*see* Bernstein Decl. Ex. 15), Plaintiffs' request does not in fact relate to an "identifiable universe" of documents, and is akin to a continuing request for all documents concerning the safety of Massey mines.  This case is thus distinguishable from the cases upon which Plaintiffs rely (Mem. at 8), each of which dealt with a request for discovery *already provided* to government regulators.

<u>Finally</u>, even if Plaintiffs limited their request to those documents already provided to regulators and private litigants, the mere fact that Plaintiffs are requesting an "identifiable universe of documents" does not render their request sufficiently "particularized" under the PSLRA.  *See In re Am. Funds Sec. Litig.*, 493 F. Supp. 2d 1103, 1107 (C.D. Cal. 2007) ("Particularized discovery has been interpreted as requiring parties to identify with specificity the documents requested.  However, in this case, Plaintiffs have not identified specific categories or types of documents sought or how the documents sought will be relevant to the claims Plaintiffs intend to assert in this case.") (citation omitted); *see also In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d at 39 (finding that request to lift the stay as to documents already produced to regulators was not particularized because "[t]he documents produced in response to those

investigations . . . are voluminous and possibly irrelevant to the claims likely to be raised in the Consolidated Complaint").  Thus, Plaintiffs request to lift the stay should be denied.

## II.  THOUGH UNNECESSARY, DEFENDANTS DO NOT OBJECT TO PLAINTIFFS' REQUEST TO ISSUE PRESERVATION SUBPOENAS TO MASSEY SUBSIDIARIES.

Plaintiffs also request that the Court allow them to serve preservation subpoenas on certain Massey subsidiaries enumerated in Exhibit 17 to the Bernstein Declaration.  (Mem. at 13-16.)  The PSLRA requires that parties to securities litigations treat relevant evidence in their custody or control as if it were the subject of a continuing discovery request during the pendency of any stay imposed by the PSLRA.  *See* 15 U.S.C. § 78u-4(b)(3)(C)(i).  In light of the fact that all of the entities listed on Plaintiffs' Exhibit 17 are subsidiaries of Massey—many or all of which are already subject to myriad preservation obligations in connection with the ongoing investigations and other lawsuits—Plaintiffs' request seems wholly unnecessary.  Nonetheless, if Plaintiffs wish to issue preservation subpoenas, Defendants do not object to their doing so, so long as:  (1) the preservation subpoenas are indeed limited to the Massey subsidiaries listed in Exhibit 17 and the categories of documents listed in Exhibit 19; and (2) any obligation to respond to the preservation subpoenas in any way is deferred until after such time as the Court has sustained the legal sufficiency of Plaintiffs' complaint.[5]

---

[5]  Though Plaintiffs at one point unequivocally state that Exhibit 17 contains "[a] list of all the entities upon which Plaintiffs propose serving preservation subpoenas" (Mem. at 16), their brief also contains inexplicable references to issuing such subpoenas to "third parties" and to "Alpha".  (Mem. at 16-17.)  To the extent that Plaintiffs seek to serve preservation subpoenas on any entity other than the Massey subsidiaries listed in Exhibit 17, that request should be denied because Plaintiffs have set forth no reason to believe that those other parties would possess documents relevant to Plaintiffs' claims.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court deny Plaintiffs' Motion for a Partial Lift of the PSLRA Discovery Stay as to the documents and materials already produced, or to be produced, in the various government investigations and private litigations that Plaintiffs cite.

Dated:  March 7, 2011

Respectfully submitted,

/s/ Jonathan L. Anderson

A.L. Emch, Esq. (WVSB #1125)
Jonathan L. Anderson, Esq. (WVSB #9628)
JACKSON KELLY PLLC
1600 Laidley Tower
Post Office Box 553
Charleston, WV 25322
(304) 340-1000

Stuart W. Gold, Esq.
Julie A. North, Esq.
CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Counsel for Defendants James B. Crawford,
E. Gordon Gee, Robert H. Foglesong,
Richard M. Gabrys, Lady Barbara Thomas
Judge, Dan R. Moore, Stanley C. Suboleski
and Massey Energy Company*

16

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2011, I electronically filed Massey Energy Company And The Outside Director Defendants' Memorandum Of Law In Opposition To Plaintiffs' Motion For Partial Lift Of The PSLRA Discovery Stay and the accompanying Compendium of Unreported Cases with the Clerk of the Court using the EM/ECF system which will send notification of such filing to the following CM/ECF participants:

- **Stephen L. Brodsky**
  sbrodsky@zsz.com

- **John F. Dascoli**
  johnfdascoli@hotmail.com, Pamdc519@aol.com

- **Samuel D. Elswick**
  selswick@jfhumphreys.com, rbell@jfhumphreys.com

- **A. L. Emch**
  aemch@jacksonkelly.com, sra@jacksonkelly.com, jcrawford@jacksonkelly.com

- **Thomas V. Flaherty**
  tflaherty@fsblaw.com, cmontague@fsblaw.com

- **Paul Jeffrey Geller**
  pgeller@rgrdlaw.com

- **Stuart W. Gold**
  sgold@cravath.com

- **Tammy R. Harvey**
  tharvey@fsblaw.com, cmontague@fsblaw.com

- **Dennis J. Herman**
  dennish@rgrdlaw.com

- **Laurie L. Largent**
  LLargent@rgrdlaw.com, triciam@rgrdlaw.com

- **J. Burton LeBlanc**
  bleblanc@baronbudd.com

- **James A. McKowen**
  Jmckowen@jfhumphreys.com, Dhoffman@jfhumphreys.com, Dmilhoan@jfhumphreys.com

- **Julie A. North**
  jnorth@cravath.com

- **Bradley J. Pyles**
  brad.pyles@cphtlogan.com, bjpyles@suddenlink.net

- **Jack Reise**
  jreise@rgrdlaw.com, pgeller@rgrdlaw.com

- **Darren J. Robbins**
  e_file_d@csgrr.com

- **Ronald S. Rolfe**
  rrolfe@cravath.com, managing_attorneys_office@cravath.com, sthompson@cravath.com

- **Mazin Sbaiti**
  msbaiti@baronbudd.com

- **Robert S. Schachter**
  rschachter@zsz.com

- **David C. Walton**
  davew@rgrdlaw.com

- **Christopher M. Wood**
  CWood@rgrdlaw.com

- **Joel H. Bernstein**
  jbernstein@labaton.com

I hereby certify that I have mailed the documents by United States Postal Service to the

following non-CM/ECF participants:

> **Michael J. Vanoverbeke**
> **Thomas C. Michaud**
> VANOVERBEKE MICHAUD & TIMMONY
> 79 Alfred Street
> Detroit, MI  48201

>                    /s/Jonathan L. Anderson
>                    Jonathan L. Anderson, Esq. (WVSB #9628)
>                    JACKSON KELLY PLLC
>                    1600 Laidley Tower
>                    Post Office Box 553
>                    Charleston, WV 25322

18