UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

| | |
|---|---|
| In re MASSEY ENERGY CO. SECURITIES LITIGATION | ) ) ) ) | Civil Action No. 5:10-cv-00689 |
| This Document Relates To: | ) ) ) ) ) ) | CLASS ACTION<br><br>The Honorable Irene C. Berger |
| ALL ACTIONS. | | |

**PLAINTIFFS' SUPPLEMENTAL PROFFER OF ADDITIONAL ALLEGATIONS
SUPPORTING PLAINTIFFS' REQUEST FOR LEAVE TO REPLEAD
THE CONSOLIDATED AMENDED COMPLAINT, IF NECESSARY**

Lead Plaintiff Commonwealth of Massachusetts Pension Reserves Investment Trust and Plaintiff David Wagner, on behalf of the Class (collectively, "Plaintiffs"), respectfully submit this supplemental proffer in further support of their opposition to the motions to dismiss filed by Defendants Massey Energy Company ("Massey" or the "Company"), Dan R. Moore, E. Gordon Gee, Richard M. Gabrys, James B. Crawford, Robert H. Foglesong, Stanley C. Suboleski, and Lady Barbara Thomas Judge, and Don L. Blankenship, Baxter F. Phillips, Jr., Eric B. Tolbert, and J. Christopher Adkins (collectively, "Defendants").

Defendants have moved to dismiss this Action on grounds that Plaintiffs have failed to meet the requirements of the Private Securities Litigation Reform Act of 1995. In addition to opposing Defendants' motions on the merits, Plaintiffs have apprised the Court of certain additional and significant facts that have come to light since the Consolidated Amended Complaint (the "Complaint") was filed on March 11, 2011, which would support amendment if the Court were to grant Defendants' motions to dismiss in whole or in part. *See* Declaration of Joel H. Bernstein ¶ 5 (Dkt. No. 104), Ex. C (Dkt. No. 104-3) (the "First Proffer").[1]

After the First Proffer was filed on June 9, 2011 with Plaintiffs' Opposition to Defendants' motions to dismiss, additional facts supporting Plaintiffs' allegations have continued to come to light. Among the most shocking revelations are those made at a public briefing conducted by MSHA on June 29, 2011, at which MSHA officials revealed that Massey kept two sets of examination books reflecting safety hazards at UBB—a sanitized version for regulators and a more complete record of safety hazards for internal use only (*infra*). To ensure that these facts are reflected in the record and available to the Court should it need to consider whether to permit a further amendment of the Complaint, Plaintiffs hereby supplement the First Proffer with

---

[1] All capitalized names, terms, and acronyms have the same meaning as the "defined terms" in the Complaint and the "First Proffer."

this "Supplemental Proffer." As with the First Proffer, the allegations in this Supplemental Proffer are representative of those which can and will be added to the Complaint, if necessary. The Supplemental Proffer is not exclusive. To the extent the Court requires amendment of the Complaint, Plaintiffs can and will add allegations in addition to those enumerated here and in the First Proffer.

Sources for the proposed additional allegations enumerated herein include: (1) a presentation made on June 29, 2011 by MSHA (the "MSHA PowerPoint"), annexed hereto as Exhibit A; and (2) documents and deposition testimony obtained in *In re Massey Energy Co. Derivative & Class Action Litigation*, No. 5430-VCS (Del. Ch. May 24, 2011) and *Manville Personal Injury Trust v. Blankenship*, Case No. 07-C-1333 (W. Va. Cir. Ct. Kanawha Cty.), which have now been made public in partially redacted form. These documents and deposition transcripts are attached hereto as Exhibits B1-B6. Reliance upon these materials is proper for the reasons enumerated in the First Proffer.

**PLAINTIFFS' SUPPLEMENTAL PROFFER OF ADDITIONAL ALLEGATIONS
SUPPORTING PLAINTIFFS' REQUEST FOR LEAVE TO REPLEAD
THE CONSOLIDATED AMENDED COMPLAINT, IF NECESSARY**

| FACTS | SOURCE |
|---|---|
| **Two Sets of Examination Books.** Massey maintained two sets of examination books reflecting safety hazards at UBB. One set was called the "official" book, and was shown to government safety inspectors. The other set was called the "production" book, and was used to record safety hazards only on an internal basis. Safety hazards recorded in the internal production book were deliberately excluded from reports in the "official" books. "Many hazards were not recorded." These examination books, reflecting chronic and hazardous conditions, were required to be "counter-signed by upper management." | Exhibit A (MSHA PowerPoint at 38-42, 47) |
| **May 18, 2009 SEPPC "Safety Update"—Percent of S&S Citations and Violations per Inspection Day in 2008.** A presentation given by Safety Compliance Officer Elizabeth Chamberlin ("Chamberlin") on May 18, 2009 informed the SEPPC's members that Massey received a greater percentage of S&S citations and a greater number of Violations per Inspection Day ("VPID") than the national industry average for the year ended December 31, 2008. | Exhibit B1 (MEEDEL00091930, MEEDEL00091931) |
| **November 9, 2009 SEPPC "Safety Update"—Percent of S&S Citations and VPID in 2009.** A presentation given by Chamberlin on November 9, 2009 informed the SEPPC's members that Massey received a greater percentage of S&S citations and a greater number of VPID than the industry average for the first nine months of 2009. | Exhibit B2 (MEEDEL00002201, MEEDEL00002211) |

| FACTS | SOURCE |
|---|---|
| **Blankenship's and Adkins' Knowledge of MSHA Citation Volume.** Blankenship testified that when he "realized how high the volume of violations had gotten in '09," he implemented a "central decision-making process" to determine how to account for fines and which violations to challenge. Adkins was one of "three primary decision-makers" in that process. As such, Massey and Blankenship relied on the "collective judgment of the legal guy, Shane [Harvey], the electrical guy, [Keith] Hainer, and the operations guy, Chris Adkins" to make decisions about Massey's response to safety violations, rather than the SEPPC. | Exhibit B5 (5/12/11 Blankenship Dep. at 113:14-115:24; 117:20-118:21) |
| **Blankenship's Autocratic Rule.** Board Chairman Admiral Bobby Ray Inman testified that Blankenship had "direct day-to-day control of everything" and that the "entire Massey organization appears to [have] be[en] managed by an autocratic central command and control structure." | Exhibit B6 (5/12/11 Inman Dep. at 29:9-11; 207:3-10) |
| **Blankenship's "Admission"—Truth on the Market Defense.** Blankenship testified that one "couldn't find out on the MSHA web site how many violations you actually had outstanding, how many had been appealed or anything. So the MSHA website was a disaster." | Exhibit B5 (5/12/11 Blankenship Dep. at 116:13-18) |

| FACTS | SOURCE |
|---|---|
| **Phillips' Knowledge that NFDL Rates Are Not Measures of Regulatory Compliance.** Phillips testified that NFDL is not a measure of compliance with mine safety laws, rules, or regulations. | Exhibit B4<br>5/10/11 Phillips Dep. at 389:2-5 |
| **Manville Settlement Violations—Judge Stucky's Order.** Based on facts detailed in the Manville Action, Kanawha County Circuit Court Judge Stucky held that a "prima facie showing" was made that Defendants violated the terms of the Manville Settlement, which Massey touted publicly through statements about post-Alma fire "safety improvement initiatives,"[2] by: (1) "Failing to implement the required monitoring, management, and reporting system;" (2) "Violating the public reporting requirements;" (3) "Failing to create and oversee a system for reporting safety compliance issues and to adopt whistleblower protections;" (4) "Failing to fulfill the training-related review, recommendation, and reporting requirements;" and (5) "Failing to make a good faith effort to reform Massey['s] corporate governance as intended by and required under the [Manville Settlement]." | Exhibit B3<br>6/14/11 Stucky Contempt Order at 1-2. |

---

[2] *See* Complaint ¶¶ 11, 81, 232, 247, 291.

| FACTS | SOURCE |
|---|---|
| **Required Gas Readings Deliberately Not Checked or Recorded**. Contrary to Defendants' representations that safety was prioritized over production and that compliant safety procedures were in place at Massey, MSHA made various findings demonstrating a reckless or intentional lack of regard for the dangers facing miners at UBB. For instance, at UBB, the multigas detector was turned off from March 18, 2010 until after the Explosion. As a result, Massey could not make required examinations of UBB's longwall bleeders.[3] Had the multigas detector been turned on, problems with methane on the longwall at UBB would have been able to be detected. In addition, MSHA found that Massey was using equipment doors at UBB rather than more reliable mine overcasts to control ventilation, and that the equipment doors at UBB were "often left open" and "subject to damage and increased leakage," thereby reducing the amount of air for miners to breathe. | Exhibit A (MSHA PowerPoint at 31, 38, 46) |
| **Miner Intimidation by Upper Management.** Safety hazards were not acceptable excuses for not running coal at UBB. For instance, a section foreman at UBB was fired for delaying production for approximately one hour in order to try to fix ventilation problems. Further, examiners at Massey were pressured not to list hazards in the Company's books. | Exhibit A (MSHA PowerPoint at 57) |
| **Widespread Training Deficiencies**. MSHA reviewed 263 UBB employee and contractor files for the two years preceding the Explosion and found 205 training deficiencies. For instance, 104 miners did not receive or complete required "experienced miner" training before commencing work; and 42 miners did not receive any training before being assigned to perform new job tasks. | Exhibit A (MSHA PowerPoint at 55) |

---

[3] Use of "bleeder systems" in underground coal mines in the United States is addressed in 30 CFR Section 75.334 of the Mine Act. Section 75.334(b)(1) states: "During pillar recovery a bleeder system shall be used to control the air passing through the area and to continuously dilute and move methane-air mixtures and other gases, dusts, and fumes from the worked-out area away from active workings and into a return air course or to the surface of the mine."

| FACTS | SOURCE |
|---|---|
| **MSHA's Explosion Findings.** The Explosion "could and should have been prevented by the mine operator." Numerous "[o]perator failures contributed" to the Explosion, including an "[e]mphasis on productivity to the detriment of safety," "[i]nadequate application of rock dust," "[i]nadequate control of float coal dust," and "[m]issing and nonfunctioning water sprays." | Exhibit A (MSHA PowerPoint at 4, 60-61, 64-65) |
| **Board Knowledge of the Freedom Mine's "Pattern of Violations."** With respect to Massey's Freedom Mine, which experienced a significant number of violations for years, and which federal regulators ordered shut down for a "pattern of violations" on November 3, 2010, Philips testified as to the Board that "Freedom Mine was a topic of discussion," but it never took any action to address those problems. | Exhibit B4 (5/10/11 Phillips Dep. at 135:13-136:1; 136:20-24) |

Dated: July 13, 2011						Respectfully submitted,

                                 */s/ Joel H. Bernstein*
                                 JOEL H. BERNSTEIN

**LABATON SUCHAROW LLP**
JOEL H. BERNSTEIN
CHRISTOPHER J. KELLER
IRA A. SCHOCHET
STEFANIE J. SUNDEL
FELICIA Y. MANN
140 Broadway, 34th Floor
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)

*Counsel for Lead Plaintiff Commonwealth of Massachusetts Pension Reserves Investment Trust and Co-Lead Counsel for the Class*

**ROBBINS GELLER RUDMAN**
  **& DOWD LLP**
PAUL J. GELLER
JACK REISE
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

**ROBBINS GELLER RUDMAN**
  **& DOWD LLP**
DENNIS J. HERMAN
CHRISTOPHER M. WOOD
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94101
Telephone: 415/288-4545
415/288-4534 (fax)

*Attorneys for Plaintiff David Wagner and Co-Lead Counsel for the Class*

**JAMES F. HUMPHREYS
  & ASSOCIATES L.C.**
SAMUEL D. ELSWICK
JAMES A. McKOWEN
United Center, Suite 800
500 Virginia Street, East
Charleston, WV 25301
Telephone: 304/347-5050
304/347-5055 (fax)

*Liaison Counsel for Lead Plaintiff
Commonwealth of Massachusetts Pension
Reserves Investment Trust and the Class*

**JOHN F. DASCOLI, PLLC**
JOHN F. DASCOLI (SBID #6303)
2442 Kanawha Boulevard, East
Charleston, WV 25311
Telephone: 304/720-8684
304/342-3651 (fax)

*Local Counsel for Plaintiffs*