**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**

ENTERED

SEP 2 8 2011

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

In re MASSEY ENERGY CO.
SECURITIES LITIGATION,

Civil Action No. 5:10-cv-00689
Judge Irene C. Berger
Magistrate Judge R. Clarke Vandervort

## ORDER GRANTING PLAINTIFFS' MOTION

## TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY

The Court, having received and reviewed Plaintiffs' motion to lift the stay of discovery and permit service of document preservation subpoenas on certain affiliates of Defendants believed to possess relevant documents pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(3)(B) ("PSLRA Discovery Stay"), the oppositions by Defendants thereto, and the United States of America's motion to intervene and to stay discovery ("Government's Motion"), Plaintiffs' partial opposition thereto, hereby issues the following Order:

    1.    Plaintiffs' motion to partially vacate the stay is granted and the PSLRA Discovery Stay is partially lifted to the extent that:

        (a)    Massey shall produce all documents enumerated in Exhibit 15 to the Declaration of Joel H. Bernstein accompanying Plaintiffs' motion (which is attached as Exhibit A to this Order) concerning the safety of all Massey mines that it has produced to, or will produce to, any private litigants and any regulatory, governmental, or investigative agencies located in the United States that are investigating the safety of Massey's mines, with the following exceptions:

1.      Massey shall not produce any documents or materials which were produced or submitted solely to a grand jury, criminal investigator, criminal prosecutor, criminal investigative government agency, or other criminal investigative governmental entity;

2.      Massey shall not produce any correspondence or communications between Massey and any grand jury, criminal investigator, criminal prosecutor, criminal investigative government agency, or other criminal investigative governmental entity;

3.      Massey shall not produce any correspondence or communications between any of the other defendants in this consolidated action and any grand jury, criminal investigator, criminal prosecutor, criminal investigative government agency, or other criminal investigative governmental entity;

4.      Massey shall not produce any subpoenas, pleadings, transcripts, correspondence, communications or other documents or materials relating to any grand jury or criminal proceedings involving Massey or any of the defendants in this consolidated action;

5.      Any documents or other materials produced by Massey pursuant to the partial lifting of the PSLRA Discovery Stay in this consolidated action under the terms of this Order shall not bear any caption, legend, marking, written statement, or other description indicating that the documents or materials were produced, presented, or submitted pursuant to a subpoena in a criminal proceeding or pursuant to any request, by subpoena or otherwise, to any grand jury, criminal investigator, criminal prosecutor, criminal investigative government agency, or other criminal investigative governmental entity;

6.      Plaintiffs shall not inquire or request, and Massey shall not disclose, any information which would allow Plaintiffs or any other persons to determine which documents

2

and materials were produced or presented, by subpoena or otherwise, to any grand jury, criminal investigator, criminal prosecutor, criminal investigative government agency, or other criminal investigative governmental entity; and

7.    Plaintiffs shall not inquire or request, and Massey shall not disclose, any information which would allow Plaintiffs or any other persons to determine the date(s) on which any documents or materials produced under the terms of this Order were produced or presented, by subpoena or otherwise, to any grand jury, criminal investigator, criminal prosecutor, criminal investigative government agency, or other criminal investigative governmental entity.

(b) The PSLRA Discovery Stay is partially lifted to permit Plaintiffs to issue preservation subpoenas for the categories of documents listed in Exhibit 19 to the Declaration of Joel H. Bernstein accompanying Plaintiffs' motion (a copy of which is attached as Exhibit B to this Order).

2.    The Government's Motion is granted to the extent that:

(a)    Intervention is granted.

(b)    The Government's motion to stay discovery is granted except as otherwise provided in this Order.

3.    In the event that the Court denies Defendants' motions to dismiss, which are to be filed on April 25, 2011, Plaintiffs may move to modify or terminate the stay of discovery granted to the Government.

4.    This Order does not preclude, prohibit, or adversely affect the Government from moving to modify the partial lifting of the PSLRA Discovery Staff set forth in this Order or from renewing or presenting a subsequent motion to stay all discovery as criminal proceedings progress

3

and continue.

**IT IS SO ORDERED**.

DATED: ~~September 29, 2011~~

HON. R. CLARKE VANDERVORT  UNITED
STATES MAGISTRATE JUDGE

4

# EXHIBIT A

# Exhibit 15

## SCHEDULE A

## DEFINITIONS

1.      "Communication" means a transmission of information of any kind through any means.

2.      "Concerning" means consisting of, referring to, reflecting, relating to, constituting, or being in any way legally, logically, or factually connected with the matter discussed.

3.      "Document" or "Documents" is intended to have the broadest possible meaning under Rule 34(a) of the Federal Rules of Civil Procedure, and includes, without limitation, Electronically Stored Information (as defined below); electronic or computerized data compilations; all drafts; Communications; correspondence; memoranda; records; reports; books; reports and/or summaries of personal conversations or interviews; diaries; graphs; charts; diagrams; tables; photographs; recordings; tapes; microfilms; minutes, records, reports and/or summaries of meetings or conferences; records and reports of consultants; press releases; stenographic, handwritten or any other notes; work papers; checks, front and back; check vouchers; check stubs or receipts; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced; any paper or writing of whatever description, including any computer database or information contained in any computer although not yet printed out.

4.      Electronically-Stored Information ("ESI") means all potentially discoverable electronically stored information and refers to ESI that contains or potentially contains information relating to facts at issue in this litigation. ESI includes, but is not limited to, all electronically stored "documents," as that term is used in Rule 34(a) of the Federal Rules of

Civil Procedure. ESI further includes, without limitation, the following: (i) information or data that is generated, received, processed, or recorded by computers or other electronic devices, including metadata (*e.g.*, author, recipient, file creation date, file modification date, etc.); (ii) internal or external web sites; (iii) output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, AOL Instant Messenger (or similar programs or files), bulletin board programs, operating systems, source code of all types, Outlook Profile Files or PRF files, Palm Resource Code or PRC files, batch files, ASCII files, and all miscellaneous media on which they reside regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; and (iv) activity listings of electronic mail receipts and/or transmittals; and any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, DVDs, CDs, external hard drives, flash drives, memory cards or on any other media for digital data storage or transmittal, such as, but not limited to, personal digital assistants (*e.g.*, Palm Pilots), hand-held wireless devices (*e.g.*, BlackBerrys), cell phones, iPods, or similar devices, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

     5.    "Massey" means Massey Energy Corporation, and each of its partnerships, subsidiaries, divisions, subdivisions, offices, joint ventures, affiliates, and predecessors, and all present and former directors, officers, executives, principals, managers, employees, accountants, in-house attorneys, independent contractors, representatives, agents, advisors, consultants, intermediaries, and other persons acting on behalf of any of the foregoing.

     6.    "MSHA" means the U.S. Mine Safety & Health Administration.

7.     "You" or "Your" means Massey and each of its respective employees, agents, representatives, attorneys, and accountants, or anyone else operating under its direction or control.

**INSTRUCTIONS**

1.     You are requested to produce all Documents not subject to a valid objection that is known by, possessed by, controlled by, or available to You.  This duty is not limited or affected by the fact that the same Document is available through another source.

2.     If any Document is known to exist but cannot be produced, that Document is to be specifically identified as precisely as possible and the reasons for the inability to produce that Document stated.

3.     With respect to any Document which is withheld on a claim of privilege, You are requested to provide a statement signed by Your attorney setting forth as to each such Document the following information:

      (a)     The name(s) of the sender(s) of the Document;

      (b)     The name(s) of the author(s) of the Document;

      (c)     The name(s) of the person(s) to whom the Document and copies, if any, were sent;

      (d)     The job title of each individual identified in (a), (b), and (c) above;

      (e)     The date of the Document;

      (f)     A brief description of the nature and subject matter of the Document; and

      (g)     The nature of the privilege or the authority which is claimed to give rise to it, including if applicable the state privilege rule being invoked.

4.     All Documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, and covers (or copies thereof).

5.      These requests relate to all Documents which are in Your possession, custody or control, or in the possession, custody or control of Your agents, attorneys, accountants, employees, partners, or other persons occupying similar positions or performing similar functions.

6.      You shall produce the original of each Document described below or, if the original is not in Your possession, custody or control, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reason, including, but not limited to, the making of notes thereon.

7.      Documents shall be produced in such fashion as to identify in whose possession and in what location that Document was located, including the physical location and the electronic location, if applicable.

8.      Whenever a Document is not produced in full or is produced in redacted form, so indicate on the Document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of Your knowledge, information and belief, and with as much particularity as possible, those portions of the Document which are not being produced.

9.      If a Document responsive to these requests was at any time in Your possession, custody or control but is no longer available for production, as to each such Document state the following information:

(a)      Whether the Document is missing or lost;

(b)      Whether the Document has been destroyed;

(c)      Whether the Document has been transferred or delivered to another person and, if so, to whom and at whose request;

(d)      Whether the Document has been otherwise disposed of; and

(e)      A precise statement of the circumstances surrounding the disposition of the Document and the date of its disposition.

10.    The fact that a Document is produced by another party or witness does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical in all respects.

11.    Documents not otherwise responsive to this discovery request shall be produced if such Documents mention, discuss, refer to, or explain the Documents which are called for by this discovery request, or if such Documents are attached to Documents called for by this discovery request and constitute routing slips, transmittal memoranda, or letters, comments, evaluations or similar materials.

12.    Whenever necessary to bring within the scope of a request a response that might otherwise be construed to be outside of its scope:

    (a)    The use of a verb in any tense shall be construed as the use of the verb in all other tenses;

    (b)    The use of the word in its singular form shall be deemed to include within its use the plural form as well, and vice versa;

    (c)    The use of the words "each" or "all" shall be construed to include within their use "any," "some," "each" or "all"; and

    (d)    The connectives "and" and "or" shall be construed either conjunctively or disjunctively.

13.    Unless otherwise noted, the relevant time period of this document preservation request is February 1, 2008 through May 17, 2010 (the "relevant time period"). This document preservation request requires that all documents created, generated or dated during the relevant time period, as well as all documents created, generated or dated outside this period, but which contain information concerning this period, including events which occurred during this period, be preserved by You.

**DOCUMENTS TO BE PRODUCED**

1.     All Documents concerning the safety of all Massey mines, including surface and underground mines, that You have produced to, will produce to, and/or have been seized by the Federal Bureau of Investigation, United States Department of Justice, United States Attorney for the Southern District of West Virginia, MSHA, the West Virginia Office of Miners' Health, Safety & Training Team, the West Virginia Governor's Independent Investigation Team, and any other regulatory, governmental, or investigative agencies located in the United States that are investigating, or will investigate the safety of Massey's mines, including, but not limited to documents concerning:

(a)     electrical equipment, main fan examinations books, and books maintained by the "fireboss";

(b)     ventilation changes made in Massey mines;

(c)     citations written by federal inspectors on MSHA Form 7000-3;

(d)     maps and other documents concerning ventilation plans;

(e)     approved and unapproved changes to ventilation plans and maps submitted to MSHA;

(f)     work done to apply rock dust in Massey mines, including when it was applied, where it was applied, and how much was applied;

(g)     the changing of bits on the longwall shearer;

(h)     the condition of bits when changed;

(i)     the changing (in any way), cleaning, or unplugging/plugging of water sprays on the shearer;

(j)     changes in water pressure on the shearer or water flow patterns emanating from the water sprays on the shearer, whether on either drum or elsewhere on the shearer;

(k)     the velocity and/or the quantity of air at any location in the mine along with where the readings were taken;

(l)     actions to change the setting of any regulator used to control airflow in the mine;

(m)     any mine doors or combination of mine doors that were left open when they should have been closed, or vice versa;

(n)     any air flow reversals and the resulting direction that occurred and were fixed or not fixed;

(o)     any information on the quantity and quality of air exhausting from the Bandytown fan and the operating pressure (in inches of water), to include pressure recording charts;

(p)     areas noted with a lack of rock dust in any mine entry or crosscut considered active areas of the mine;

(q)     accumulations of combustible materials noted in any mine entry or crosscut considered active areas of the mine;

(r)     any other hazards found in any mine entry or crosscut considered an active area of the mine; and

(s)     organizational charts and/or documents from databases indicating when miners were placed to perform a job, or tasks related to it, other than their regular job and tasks, and how long they were doing it.

2.     All Documents concerning the safety of all Massey mines, including surface and underground mines, that You have produced, or will produce in connection with *In re Massey Energy Company Derivative Litigation*, No. 5430-CC (Del. Ch.) and *Manville Pers. Injury Trust*

*v. Blankenship*, Nos. 07-C-1333, 10-C-715 (W. Va. Cir. Ct.)., including, but not limited to documents concerning:

      (a)    electrical equipment, main fan examinations books, and books maintained by the "fireboss";

      (b)    ventilation changes made in Massey mines;

      (c)    citations written by federal inspectors on MSHA Form 7000-3;

      (d)    maps and other documents concerning ventilation plans;

      (e)    approved and unapproved changes to ventilation plans and maps submitted to MSHA;

      (f)    work done to apply rock dust in Massey mines, including when it was applied, where it was applied, and how much was applied;

      (g)    the changing of bits on the longwall shearer;

      (h)    the condition of bits when changed;

      (i)    the changing (in any way), cleaning, or unplugging/plugging of water sprays on the shearer;

      (j)    changes in water pressure on the shearer or water flow patterns emanating from the water sprays on the shearer, whether on either drum or elsewhere on the shearer;

      (k)    the velocity and/or the quantity of air at any location in the mine along with where the readings were taken;

      (l)    actions to change the setting of any regulator used to control airflow in the mine;

      (m)    any mine doors or combination of mine doors that were left open when they should have been closed, or vice versa;

    (n)    any air flow reversals and the resulting direction that occurred and were fixed or not fixed;

    (o)    any information on the quantity and quality of air exhausting from the Bandytown fan and the operating pressure (in inches of water), to include pressure recording charts;

    (p)    areas noted with a lack of rock dust in any mine entry or crosscut considered active areas of the mine;

    (q)    accumulations of combustible materials noted in any mine entry or crosscut considered active areas of the mine;

    (r)    any other hazards found in any mine entry or crosscut considered an active area of the mine; and

    (s)    organizational charts and/or documents from databases indicating when miners were placed to perform a job, or tasks related to it, other than their regular job and tasks, and how long they were doing it.

# EXHIBIT B

# Exhibit 19

## SCHEDULE A

**THIS REQUEST IS FOR THE LIMITED PURPOSE OF INSTRUCTING
YOU IN THE PRESERVATION OF DOCUMENTS IN YOUR
POSSESSION, CUSTODY OR CONTROL, UNTIL FURTHER NOTICE.**

**NO PRODUCTION OF DOCUMENTS IS
REQUIRED OR BEING SOUGHT AT THIS TIME.**

### DEFINITIONS

1.      "Communication" means a transmission of information of any kind through any means.

2.      "Concerning" means consisting of, referring to, reflecting, relating to, constituting, or being in any way legally, logically, or factually connected with the matter discussed.

3.      "Document" or "Documents" is intended to have the broadest possible meaning under Rule 34(a) of the Federal Rules of Civil Procedure, and includes, without limitation, Electronically Stored Information (as defined below); electronic or computerized data compilations; all drafts; Communications; correspondence; memoranda; records; reports; books; reports and/or summaries of personal conversations or interviews; diaries; graphs; charts; diagrams; tables; photographs; recordings; tapes; microfilms; minutes, records, reports and/or summaries of meetings or conferences; records and reports of consultants; press releases; stenographic, handwritten or any other notes; work papers; checks, front and back; check vouchers; check stubs or receipts; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced; any paper or writing of whatever description, including any computer database or information contained in any computer although not yet printed out.

4. Electronically-Stored Information ("ESI") means all potentially discoverable electronically stored information and refers to ESI that contains or potentially contains information relating to facts at issue in this litigation. ESI includes, but is not limited to, all electronically stored "documents," as that term is used in Rule 34(a) of the Federal Rules of Civil Procedure. ESI further includes, without limitation, the following: (i) information or data that is generated, received, processed, or recorded by computers or other electronic devices, including metadata (*e.g.*, author, recipient, file creation date, file modification date, etc.); (ii) internal or external web sites; (iii) output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, AOL Instant Messenger (or similar programs or files), bulletin board programs, operating systems, source code of all types, Outlook Profile Files or PRF files, Palm Resource Code or PRC files, batch files, ASCII files, and all miscellaneous media on which they reside regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; and (iv) activity listings of electronic mail receipts and/or transmittals; and any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, DVDs, CDs, external hard drives, flash drives, memory cards or on any other media for digital data storage or transmittal, such as, but not limited to, personal digital assistants (*e.g.*, Palm Pilots), hand-held wireless devices (*e.g.*, BlackBerrys), cell phones, iPods, or similar devices, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

5. "Massey" means Massey Energy Corporation. and each of its partnerships, subsidiaries, divisions, subdivisions, offices, joint ventures, affiliates and predecessors, and all

2

present and former directors, officers, executives, principals, managers, employees, accountants, in-house attorneys, independent contractors, representatives, agents, advisors, consultants, intermediaries, and other persons acting on behalf of any of the foregoing.

6.      "MSHA" means the U.S. Mine Safety & Health Administration.

7.      "You" or "Your" means Massey and each of its respective employees, agents, representatives, attorneys, and accountants, or anyone else operating under its direction or control.

## INSTRUCTIONS

1.      You are required to preserve all documents in your possession, custody or control relating to the matters discussed below under the heading "Documents to be Preserved." The fact that a document is preserved or produced by a defendant or other subpoenaed third party does not relieve you of the obligation to preserve, or subsequently produce, your copy of the same document, even if the two documents are identical in all respects.

2.      In preserving documents and other materials, you are requested to preserve all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by your attorneys or their agents, employees, representatives or investigators.

3.      Documents are to be preserved in full.

4.      The original or each document requested, together with all non-identical copies and drafts of that document, should be preserved.

5.      All documents should be preserved so that they may, if needed or requested, be produced later pursuant to Rule 45(d)(1) of the Federal Rules of Civil Procedure.

3

6.     All documents shall be preserved so that they may later be produced in the file folder, envelope or other container in which the documents are kept, maintained or stored in the ordinary course of business.

7.     Documents attached to documents called for by this subpoena (*e.g.*, attachments or exhibits) or which constitute routing slips, transmittal memoranda or letters, comments, post-it notes, or similar materials shall be preserved.

### ADDITIONAL INSTRUCTIONS CONCERNING PRESERVATION OF ELECTRONIC AND COMPUTER DOCUMENTS

You shall preserve in its original form all ESI relating to Massey that would be responsive to any of the Requests set forth below. You shall suspend any activity, policy or practice that may alter, delete, or render not reasonably accessible any relevant ESI. This suspension applies to both normal data destruction and backup tape rotation and recycling programs where such programs risk destroying or altering relevant ESI. You shall not recycle or reuse any backup tape containing ESI relating to Massey that would be responsive to any of the Requests set forth below. ESI shall not be converted to a form that alters the ESI, deletes the ESI, degrades its accessibility and/or degrades its search ability. You should also preserve any application software necessary to view relevant ESI to the extent such application software is proprietary or otherwise not generally commercially available.

### RELEVANT TIME PERIOD

Unless otherwise noted, the relevant time period of this document preservation request is February 1, 2008 through May 17, 2010 (the "relevant time period"). This document preservation request requires that all documents created, generated or dated during the relevant time period, as well as all documents created, generated or dated outside this period, but which

4

contain information concerning this period, including events which occurred during this period, be preserved by You.

Please preserve documents described herein belonging to, stored on behalf of, or accessible by You in the normal course, as well as documents belonging to or accessible by Your assistants, office administrative personnel, direct reports, or employees.

## DOCUMENTS TO BE PRESERVED

1. All Communications between Massey and MSHA concerning the safety of all Massey mines, including surface and underground mines.

2. All Documents concerning the safety of Massey's surface and underground mines, including, but not limited to documents concerning:

  (a) electrical equipment, main fan examinations books, and books maintained by the "fireboss";

  (b) ventilation changes made in Massey mines;

  (c) citations written by federal inspectors on MSHA Form 7000-3;

  (d) maps and other documents concerning ventilation plans;

  (e) approved and unapproved changes to ventilation plans and maps submitted to MSHA;

  (f) work done to apply rock dust in Massey mines, including when it was applied, where it was applied, and how much was applied;

  (g) the changing of bits on the longwall shearer;

  (h) the condition of bits when changed;

  (i) the changing (in any way), cleaning, or unplugging/plugging of water sprays on the shearer;

5

(j)     changes in water pressure on the shearer or water flow patterns emanating from the water sprays on the shearer, whether on either drum or elsewhere on the shearer;

(k)     the velocity and/or the quantity of air at any location in the mine along with where the readings were taken;

(l)     actions to change the setting of any regulator used to control airflow in the mine;

(m)     any mine doors or combination of mine doors that were left open when they should have been closed, or vice versa;

(n)     any air flow reversals and the resulting direction that occurred and were fixed or not fixed;

(o)     any information on the quantity and quality of air exhausting from the Bandytown fan and the operating pressure (in inches of water), to include pressure recording charts;

(p)     areas noted with a lack of rock dust in any mine entry or crosscut considered active areas of the mine;

(q)     accumulations of combustible materials noted in any mine entry or crosscut considered active areas of the mine;

(r)     any other hazards found in any mine entry or crosscut considered an active area of the mine; and

(s)     organizational charts and/or documents from databases indicating when miners were placed to perform a job, or tasks related to it, other than their regular job and tasks, and how long they were doing it.

6