UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

| | | |
|---|---|---|
| In re MASSEY ENERGY CO. SECURITIES LITIGATION | ) ) ) | Civil Action No. 5:10-cv-00689 |
| | ) | <u>CLASS ACTION</u> |
| This Document Relates To: | ) ) ) | The Honorable Irene C. Berger |
| ALL ACTIONS. | ) ) ) | |

**PLAINTIFFS' THIRD PROFFER OF ADDITIONAL ALLEGATIONS SUPPORTING PLAINTIFFS' REQUEST FOR LEAVE TO REPLEAD THE CONSOLIDATED <u>AMENDED COMPLAINT, IF NECESSARY</u>**

Lead Plaintiff Commonwealth of Massachusetts Pension Reserves Investment Trust and Plaintiff David Wagner, on behalf of the Class (collectively, "Plaintiffs"), respectfully submit this additional supplemental proffer (the "Third Proffer") in further support of their opposition to the motions to dismiss filed by Defendants Massey Energy Company ("Massey" or the "Company"), Dan R. Moore, E. Gordon Gee, Richard M. Gabrys, James B. Crawford, Robert H. Foglesong, Stanley C. Suboleski, and Lady Barbara Thomas Judge, and Don L. Blankenship, Baxter F. Phillips, Jr., Eric B. Tolbert, and J. Christopher Adkins (collectively, "Defendants").

On April 25, 2011, Defendants moved to dismiss this Action on grounds that Plaintiffs have failed to meet the requirements of the Private Securities Litigation Reform Act of 1995. On June 9, 2011, Plaintiffs opposed Defendants' motions on the merits, and also respectfully requested, in the event the motions to dismiss are nonetheless granted in whole or in part, leave to amend pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. *See* Plaintiffs' Memorandum in Opposition to Defendants' Motions to Dismiss ("Plaintiffs' Opposition") at 49 and n.66 (Dkt. No. 103). In support of this contingent request, Plaintiffs initially proffered Exhibit C to the Declaration of Joel H. Bernstein (the "First Proffer" (Dkt. No. 104-3)) containing a sampling of additional facts that could, only if necessary, be alleged in a second amended complaint.[1] On July 13, 2011, Plaintiffs augmented the First Proffer to include facts that the Mine Safety and Health Administration ("MSHA") made available to the public for the first time on June 29, 2011 in a preliminary briefing on its investigation into the Upper Big Branch ("UBB") mine explosion on April 5, 2010 (the "Explosion"). *See* Plaintiffs' Supplemental Proffer of Additional Allegations Supporting Plaintiffs' Request for Leave to

---

[1] All capitalized names, terms, and acronyms have the same meaning as the "defined terms" in the Complaint and the "First Proffer."

Replead the Consolidated Amended Complaint, if Necessary (the "Supplemental Proffer"), Ex. A (Dkt. No. 122-1&2).[2]

Additional material facts supporting Plaintiffs' allegations have now emerged. Specifically, on December 6, 2011, MSHA released its final report on the UBB investigation ("Report of Investigation – Fatal Underground Mine Explosion, April 5, 2010" – the "Final Report"), annexed hereto as Exhibit A, along with an MSHA News Release dated December 6, 2011 ("MSHA News Release"), annexed hereto as Exhibit B.[3] The Final Report confirmed MSHA's preliminary findings on a multitude of issues that have already been briefed, provided additional facts and documentation substantiating those findings, and issued 369 new violations to Massey and its subsidiary Performance Coal Company ("PCC") amounting to a record fine of $10,825,368, as highlighted *supra*.

To ensure that these additional facts are reflected in the record and available to the Court should it need to consider whether to permit a further amendment of the Complaint, Plaintiffs hereby supplement the First Proffer and the Supplemental Proffer (collectively, the "Prior Proffers") with this Third Proffer. As with the Prior Proffers, the allegations in this Third Proffer are representative of those that can and will be added to the Complaint, if necessary. The Third Proffer is not exclusive. To the extent the Court requires amendment of the Complaint, Plaintiffs can and will add allegations in addition to those enumerated here and in the Prior Proffers.

---

[2] In addition to information released in a PowerPoint presentation by MSHA on June 29, 2011, the Supplemental Proffer also contained certain documents and excerpts from transcripts of the depositions of Defendant Phillips and Admiral Inman (in addition to Blankenship's) taken in the Delaware Derivative Action and Manville Action that were not made known and available for practical use by Plaintiffs until after Plaintiffs' Opposition was filed on June 9, 2011.

[3] Along with the Final Report, MSHA also released a multitude of supplementary materials, including a PowerPoint presentation used in MSHA's public briefing on December 6, 2011, a video simulation of the UBB explosion, transcripts of witness interviews, investigative reports, record books, ventilation and roof control plans, an index of citations and orders, and proposed assessment and statement of account (enumerating the civil penalties imposed). All of these materials can be found on MSHA's public website for the UBB investigation, *available at* http://www.msha.gov/PerformanceCoal/PerformanceCoal.asp (last visited Dec. 22, 2011).

Reliance upon these materials is proper for the reasons enumerated in the Prior Proffers and Plaintiffs' Reply Memorandum of Law In Further Support of Their Request for Judicial Notice (the "RJN Reply Memorandum," (Dkt. No. 126)).[4]

Below are some of the significant final conclusions and additional facts and details released in the Final Report:

- MSHA determined that the "physical conditions that led to the explosion were *the result of a series of basic safety violations at UBB* and were *entirely preventable*."[5] Final Report at 2.

- MSHA concluded that the "*root cause*" of the Explosion was "*the unlawful policies and practices implemented by PCC/Massey*" – specifically, that "PCC/Massey *promoted and enforced a workplace culture that valued production over safety,* including practices calculated to allow it to conduct mining operations in violation of the law." *Id.* MSHA cited the following "*systematic, intentional, and aggressive*" efforts by PCC/Massey as examples of such illegal practices: routine *intimidation of miners* to prevent them from reporting safety and health violations; *advance notice of health and safety inspections* by regulators; and keeping "*two sets of books*" with respect to safety and health hazards in order to hide hazardous conditions from inspectors. *Id.* In the Final Report, MSHA provided extensive new details and documentation substantiating the pervasiveness of these illegal practices:

    o For example, with respect to the "two sets of books" practice, MSHA provided a new, long list of the hazards (organized by area of the mine) that were recorded in Massey's own production books but not in the official examination books. *Id.* at 45-50.

- In addition to this "culture" root cause, MSHA also identified *numerous other contributory factors* as playing a significant role in the Explosion, including the following failures by Massey: to comply with its training plan; to perform adequate pre-shift, on-shift, and weekly examinations; to correct or post with conspicuous "Danger" signs hazardous conditions immediately; to maintain the longwall shearer, which was the ignition source for the Explosion, in a safe operating condition; to maintain the volume and velocity of the air current so as to dilute and carry away dangerous gases, dust, smoke and fumes; to comply with the approved roof control

---

[4] Defendants objected to the Prior Proffers on various grounds. *See* Defendants' Reply Memorandum in Further Support of Defendants' Joint Motion to Dismiss at 20, n.16 (Dkt. No. 124); Defendants' Memorandum of Law in Response to Plaintiffs' Request for Judicial Notice in Further Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss and Plaintiffs' Supplemental Proffer at 7-9 (Dkt. No. 125). Plaintiffs responded to these objections in their RJN Reply Memorandum at 8-12.

[5] Throughout the Third Proffer, all emphases are added unless otherwise indicated.

plan; to adequately rock dust the mine; to clean up large accumulations of loose coal, coal dust, and float coal dust. *Id.* at 157-159.

- With respect to the *physical causes* of the Explosion, MSHA confirmed its preliminary findings that the Explosion was caused by a "small amount of methane, likely liberated from the mine floor, accumulated in the longwall area due to poor ventilation and roof control practices." *Id.* at 6.

    o MSHA determined that *the methane liberation resulted from Massey mining into a known fault zone that was a reservoir and conduit for methane, which had released methane on three previous occasions at UBB* (an explosion in 1997 and methane outbursts in 2003 and 2004). *Id.* MSHA provided new details and documentation with respect to this prior methane outburst history at UBB, *id.* at 80-96, concluding that these *incidents put Massey "on notice for methane hazards on the longwall face." Id.* at 163. It found that despite this specific notice, Massey nevertheless *"failed to implement / follow the recommendations of MSHA's geologist and Ventilation technical support group following the 2004 outburst." Id.*

    o MSHA also identified Massey's failure to comply with its *roof control plan* in the tailgate of the longwall panel, specifically the *failure to install two rows of cable bolts or rows* (installing only one, which contributed to the fall of the tailgate roof that in turn restricted air flow), as *allowing explosive methane to accumulate* in the tailgate area near the shearer. *Id.* at 6.

    o According to MSHA, Massey also *failed to adequately maintain the longwall shearer, which had worn bits and missing water sprays, creating an ignition source for the accumulated methane*. *Id.* at 6-7. The flame ignited by the shearer sparks then encountered the larger methane accumulation in the tailgate area, triggering a localized explosion. *Id.* at 7.

    o This localized explosion then encountered a *fuel source in the form of dangerous accumulations of explosive coal dust and float coal dust, which propagated it into a massive explosion* throughout the mine. MSHA specifically attributed the propagation of the explosion to Massey's failures to adequately rock dust the mine and to clean up the large accumulations of coal dust and float coal dust, which had been allowed to "*build up over days, weeks, and months," and many of which "were left from the initial development of this area of the mine, indicating a long-established policy of ignoring basic safety practices." Id.* at 7-8. Notably, MSHA provided pictures of the large accumulations of combustible loose coal, coal dust and float coal dust, which indicated how obvious these hazards were. *See e.g.*, *id.* at 43, 52-53.

- MSHA issued a total of *369 new citations and orders* to Massey and PCC, including an *"unprecedented" 21 violations designated as "flagrant*," which are the most serious of S&S violations and carry the highest penalties possible under the Mine

- 4 -

Act.[6] MSHA News Release; *see also* Final Report at 9-10. The new violations amounted to an MSHA *fine of $10,825,368,* which was *"the largest in agency history."* MSHA News Release. In particular, MSHA issued *12 new "significant and substantial" ("S&S") violations* to Massey that were deemed to have *contributed* to the Explosion, *9 of which were designated "flagrant."* *Id.*; Final Report at 9-10, 161-174 (describing in detail the 12 violations). In addition to the 12 contributory violations, MSHA issued *357 other violations to Massey/PCC* that did not directly contribute to the Explosion (and were thus not discussed in the Final Report). *Id.*

- MSHA's post-Explosion audit of UBB revealed that Massey *significantly underreported its Non-Fatal Days Lost incident ("NFDL") rates at UBB from 2006-2010.* *Id.* at 61-62. For example, in 2009 Massey had reported an NFDL rate of 5.81, but MSHA's post-Explosion audit showed it to be almost double that – 10.24 (in comparison to national rate of 4.04). *Id.*

Dated: December 22, 2011

Respectfully submitted,

<u>     */s/ Joel H. Bernstein*     </u>
JOEL H. BERNSTEIN

**LABATON SUCHAROW LLP**
JOEL H. BERNSTEIN
CHRISTOPHER J. KELLER
IRA A. SCHOCHET
FELICIA Y. MANN
140 Broadway, 34th Floor
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)

*Counsel for Lead Plaintiff Commonwealth of Massachusetts Pension Reserves Investment Trust and Co-Lead Counsel for the Class*

---

[6] Under the Mine Act, a "flagrant" violation means "a reckless or repeated failure to make reasonable efforts to eliminate a known violation of a mandatory health or safety standard that substantially and proximately caused, or reasonably could have been expected to cause, death or serious bodily injury." MSHA Handbook No. PH08-I-1, *Citation and Order Writing Handbook for Coal Mines and Metal and Nonmetal Mines*, March 2008, *available at* http://www.msha.gov/readroom/handbook/ph08-i-1.pdf (last visited Dec. 22, 2011). With the passage of the MINER Act, Section 110(b) of the Mine Act was amended to provide that violations deemed to be "flagrant" may be assessed a maximum civil penalty of $220,000 per violation. *Id.*

- 5 -

**ROBBINS GELLER RUDMAN
  & DOWD LLP**
PAUL J. GELLER
JACK REISE
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

**ROBBINS GELLER RUDMAN
  & DOWD LLP**
DENNIS J. HERMAN
CHRISTOPHER M. WOOD
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94101
Telephone: 415/288-4545
415/288-4534 (fax)

*Attorneys for Plaintiff David Wagner
and Co-Lead Counsel for the Class*

**JAMES F. HUMPHREYS
  & ASSOCIATES L.C.**
SAMUEL D. ELSWICK
JAMES A. McKOWEN
United Center, Suite 800
500 Virginia Street, East
Charleston, WV 25301
Telephone: 304/347-5050
304/347-5055 (fax)

*Liaison Counsel for Lead Plaintiff
Commonwealth of Massachusetts Pension
Reserves Investment Trust and the Class*

**JOHN F. DASCOLI, PLLC**
JOHN F. DASCOLI (SBID #6303)
2442 Kanawha Boulevard, East
Charleston, WV 25311
Telephone: 304/720-8684
304/342-3651 (fax)

*Local Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2011, I electronically filed the foregoing documents with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

- **Jonathan L. Anderson**
  jlanderson@jacksonkelly.com

- **Stephen L. Brodsky**
  sbrodsky@zsz.com

- **Ricklin Brown**
  rbrown@baileyglasser.com

- **John F. Dascoli**
  johnfdascoli@hotmail.com, Pamdc519@aol.com

- **Samuel D. Elswick**
  selswick@jfhumphreys.com, rbell@jfhumphreys.com

- **A. L. Emch**
  aemch@jacksonkelly.com, sra@jacksonkelly.com, jcrawford@jacksonkelly.com

- **Thomas V. Flaherty**
  tflaherty@fsblaw.com, cmontague@fsblaw.com

- **Paul Jeffrey Geller**
  pgeller@rgrdlaw.com

- **Brian A. Glasser**
  bglasser@baileyglasser.com

- **Stuart W. Gold**
  sgold@cravath.com

- **Tammy R. Harvey**
  tharvey@fsblaw.com, cmontague@fsblaw.com

- **Dennis J. Herman**
  DennisH@rgrdlaw.com

- **Laurie L. Largent**
  LLargent@rgrdlaw.com, triciam@rgrdlaw.com

- **J. Burton LeBlanc**
  bleblanc@baronbudd.com

- **Mitchell A. Lowenthal**
  mlowenthal@cgsh.com

- **James A. McKowen**
  Jmckowen@jfhumphreys.com, Dhoffman@jfhumphreys.com, Dmilhoan@jfhumphreys.com

- **Boaz S. Morag**
  bmorag@cgsh.com

- **Christopher S. Morris**
  cmorris@baileyglasser.com

- **Julie A. North**
  jnorth@cravath.com

- **Bradley J. Pyles**
  brad.pyles@cphtlogan.com, bjpyles@suddenlink.net

- **Jack Reise**
  jreise@rgrdlaw.com, pgeller@rgrdlaw.com

- **Darren J. Robbins**
  e_file_d@csgrr.com

- **Ronald S. Rolfe**
  rrolfe@cravath.com, managing_attorneys_office@cravath.com, sthompson@cravath.com

- **Mazin Sbaiti**
  msbaiti@baronbudd.com

- **Robert S. Schachter**
  rschachter@zsz.com

- **David C. Walton**
  davew@rgrdlaw.com

- **Fred B. Westfall, Jr.**
  fred.westfall@usdoj.gov

- **Christopher M. Wood**
  CWood@rgrdlaw.com

DATED:  December 22, 2011          */s/ Joel H. Bernstein*
JOEL H. BERNSTEIN
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jbernstein@labaton.com