UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

| | |
|---|---|
| In re MASSEY ENERGY CO. SECURITIES LITIGATION )<br>)<br>)<br>This Document Relates To: )<br>)<br>ALL ACTIONS. )<br>) | Civil Action No. 5:10-cv-00689-ICB<br><br>CLASS ACTION<br><br>The Honorable Irene C. Berger |

**JOINT STATEMENT OF THE PARTIES**

Lead Plaintiff Commonwealth of Massachusetts Pension Reserves Investment Trust and Plaintiff David Wagner (collectively, "Plaintiffs"), on behalf of the putative Class, and Defendants Massey Energy Company ("Massey" or the "Company," now known as Alpha Appalachia Holdings, Inc.), Don L. Blankenship, Baxter F. Phillips, Jr., Eric B. Tolbert, Richard J. Gabrys, Lady Barbara Thomas Judge, Dan R. Moore, James B. Crawford, Robert H. Foglesong, Stanley C. Suboleski, E. Gordon Gee, and J. Christopher Adkins (collectively, "Defendants"), and Intervenor the United States of America (the "Government") by their representative undersigned counsel, (collectively, the "Parties") hereby respectfully submit pursuant to the Court's Order dated June 12, 2012 this Joint Statement detailing the Parties' negotiations and respective positions concerning modification of the discovery stay in this action previously imposed pursuant to the Court's Order Granting Plaintiffs' Motion to Partially Lift the PSLRA Discovery Stay (the "PSLRA Order") dated September 28, 2011 [Dkt. No. 128].

**I.      NEGOTIATIONS OF THE PARTIES.**

Since the Court extended the time for Plaintiffs and Defendants to submit their report of the Rule 26(f) meeting on June 12, 2012 in response to the Plaintiffs' and Defendants' Joint Motion to Modify Amended Order and Notice Issued on March 30, 2012 Regarding Discovery

Planning Schedule [Dkt. No. 143], counsel for the Parties have engaged in good faith negotiations regarding the extension or modification of the discovery stay in place in this case pursuant to the Court's September 28, 2011 Order Granting Plaintiffs' Motion to Partially Lift the PSLRA Discovery Stay [Dkt. No. 128]. The Parties have had multiple discussions with each other, including teleconferences between and among counsel for the Plaintiffs, Defendants and the Government during which different approaches were considered. To date, the parties and the Government have been unsuccessful in reaching a common agreement.

## II. PLAINTIFFS' POSITION.

On June 28, 2012, Plaintiffs and the Government were finally able to reach agreement regarding an alternative modification of the discovery stay, as set forth in the proposed Conditional Stipulation Concerning Modification of the Discovery Stay (the "Stipulation"), which is attached hereto as Exhibit A, conditioned upon the Court rejecting their respective preferences.

First, the discovery stay would remain in effect, with certain enumerated exceptions, until November 1, 2012, when it would be lifted in its entirety. However, in an effort to move the case forward even while the stay is still in effect, so that there would be a minimum of wasted time, the parties will be permitted to serve discovery requests before November 1, 2012, starting on a date after the Scheduling Conference before the Court (currently scheduled for July 12, 2012), to be determined by Court order. The parties would serve the Government with a copy of all subpoenas, deposition notices, and discovery requests (collectively, "discovery requests"). The parties would then be required to serve any objections to the discovery requests at a time determined by the Federal Rules of Civil Procedure (or, otherwise, by Court order) and then, again in an effort to not waste time, timely attempt to resolve any disputes resulting from these objections.

Further, the responding parties also would be obligated to diligently collect for production all documents responsive to document requests served upon them, and otherwise prepare responses to other discovery requests, as if there were no stay in place, but would not produce such documents or serve such responses until after either notification from the Government that it has no objections to particular requests, or resolution of such objections. Similarly, no depositions would take place until after either notification from the Government that it has no objections to particular depositions or resolution of such objections. The Government would have 30 days from November 1, 2012 (and so would not need to focus on this case until then), until and including December 1, 2012 (or 30 days from date of service of the discovery requests, if served after November 1, 2012) within which to object to any discovery requests, though it would, in good faith, notify the parties some time before those deadlines if it has no objections to particular or all requests.

In addition to the above terms, Plaintiffs and the Government also agreed to various other provisions in the Stipulation, all designed to address the Government's other stated concerns, including barring any party from seeking discovery from the Government or seeking to identify which documents had been produced to the Government or other criminal investigative bodies in connection with the criminal proceedings.

Again, for both the Government and Plaintiffs, the agreement as to these provisions in the attached Stipulation is conditioned on rejection by the Court of their respective preferences. As for Plaintiffs, they contend that the proper balancing of the interests of the Government and class members in this case compels a lifting of the stay as to party documentary and written discovery one week after the Scheduling Conference.

Plaintiffs do not wish to impede any legitimate interests of the Government in protecting the integrity of its criminal investigation and any related prosecutions and have crafted their

request with their understanding of those interests based on their discussions with the Government. Specifically, the Government advised Plaintiffs that its primary concern was that Defendants (some of whom may be potential targets in the criminal investigation) not be able to prematurely learn certain information that would not be available in criminal discovery and, thus, reveal the Government's strategy in its criminal investigation. Thus, the two discovery issues it identified as impacting on that concern were: 1) discovery of third parties, in particular certain non-business records of such third parties; and 2) depositions, in particular of third party witnesses who may be cooperating in the Government's investigation.

Other than the proposed modification for early party documentary and written discovery, Plaintiffs accept and believe appropriate all of the other provisions they agreed to with the Government as reflected in the attached Stipulation, including, as described in more detail above, continuation of the stay on depositions and non-party discovery until November 1, 2012, early service of all discovery requests and objections thereto, a delay in the Government's obligation to serve objections (though only, as to Plaintiffs' requested proposal, with regard to the stayed depositions and non-party discovery) until December 1, 2012, and the other protections provided to the Government.

On June 15, 2012, in the midst of negotiations between Plaintiffs and the Government, the court in the unrelated Massey derivative litigation in Delaware, *In re Massey Energy Company Derivative Litigation*, No. 5430-CS (Del. Ch.) (the "Delaware Action"), ordered a stay of all discovery in that action until January 15, 2013, based on the Government's continuing criminal investigation. *See* Transcript of June 15, 2012 hearing ("Tr."), attached hereto as Exhibit B, at 37. As a result, the Government advised Plaintiffs that in discussions it was having with Defendants, they were insisting on maintaining the stay until January 15, 2013, the date ordered by the court in the Delaware Action. The Government also advised that it would support

4

such a request, but was open to an alternative agreement with Plaintiffs, conditioned on the Court's rejection of Defendants' request. As described above, the Plaintiffs and the Government arrived at such a conditional agreement on June 28.

Plaintiffs contend that the decision in the Delaware Action should not be relevant to the determination by the Court as to how to proceed, given the various material differences in the two cases and their procedural postures. The claims alleged in the Delaware Action relate to harm allegedly suffered by Massey itself, a company that no longer exists as a result of its merger with Alpha Natural Resources, Inc. Those claims have yet to be tested by a motion to dismiss. Given the additional hurdles these derivative claims face, Chancellor Strine commented at the time that he granted the referenced stay that they may have little merit, calling them "icky." *See* Tr. at 24-25. By contrast, in this action, Plaintiffs have not only already defeated the motions to dismiss, but the Court has issued a 47-page decision in which it found for Plaintiffs on all material issues. Accordingly, the cost/benefit analysis of allowing discovery to go forward that the Delaware Court engaged in is quite different than that which is appropriate here.

Indeed, acknowledging such potential differences, the Court in the Delaware Action expressly pointed out that it "can't control what other forums are going to do" and that the Court in this action may disagree with its decision. *Id.* at 34. It further noted that Defendants will give the Delaware derivative plaintiffs any discovery that is ordered by another court so that there would be a "level playing field" between the two actions. *Id.*

It is also noteworthy that the Government was not a participant in Defendants' motion in the Delaware Action and, thus, never communicated to the Delaware Court what it wanted with respect to the discovery stay. Indeed, Defendants in the Delaware Action, who had been in communication with the Government, had sought a November 1, 2012 date—***the date agreed to between the Government and Plaintiffs in their conditional alternative proposal***—to lift the

stay based on what Defendants had "inferred [from those communications] should be sufficient time for [the Government] to do what they need to do." *Id.* at 6.

Also, although the Delaware Court expressed a concern with respect to the Government being burdened with reviewing, and if necessary, seeking to limit the parties' discovery requests, *see id.* at 17, 22, such a burden would be immaterial here given the provisions of both Plaintiffs' and the stipulated common alternative proposals. Under Plaintiffs' proposal, until November 1, 2012, only party documentary and written discovery is permitted to be produced (and under the common alternative, *no discovery* can be produced until that date). Again, the Government has indicated that its concerns are not focused on such discovery, an important point never considered by the court in the Delaware Action, and, therefore, all the Government would need do is ensure that the discovery is so limited. Second, under both proposals, the burden of moving the Court if the parties and the Government cannot resolve any objection the Government makes is on the requesting party, not the Government. Third, given that the Government's concerns are focused on third party discovery and depositions, the discovery requests the Government would need to focus on after November 1, 2012 likely would be relatively small in number.

On June 28, 2012, in a meet and confer telephone call between the parties, Plaintiffs discussed with Defendants the alternative agreement with respect to the discovery stay that they had reached with the Government. Defendants did not agree to this proposal, instead insisting that all discovery should be stayed until January 15, 2013, as ordered in the Delaware Action.

Plaintiffs were recently advised that, after inquiring with counsel for Defendants, as the Government had previously stated to Plaintiffs it would, it was told that "there are many, many documents the individual defendants don't have" that presumably Massey has in its possession. This fact is relevant only to Plaintiffs' proposal for early documentary discovery and production, and not the alternative that Plaintiffs and the Government agreed upon. Plaintiffs note that the

6

Individual Defendants were the most senior officers of Massey, in charge of all aspects of its operation, and have presented a common defense with Massey in this and other litigation relating to the same core set of facts. It is inconceivable to Plaintiffs that the Individual Defendants have not seen relevant and material documents in Massey's possession or are not aware of their contents. Nonetheless, if the Court deems it necessary, Plaintiffs will accede to an amendment to their proposal to restrict early documentary discovery and production to just the Individual Defendants.

### III.     DEFENDANTS' POSITION.

The Defendants understand that the Government believes that discovery should remain stayed until the earlier of January 15, 2013 or the completion of the Government's criminal investigation—the same date that a discovery stay in a case substantially overlapping with this one will remain in effect—so that the Government can pursue its work in service of the public interest without the burden and distraction of ongoing discovery on inconsistent schedules in related civil actions in multiple jurisdictions. The Defendants accordingly accept that position (which means that they will not be able to take discovery to defend themselves in this case) until that time (Plaintiffs here, in contrast, have already received over 23,000 documents comprising hundreds of thousands of pages as a result of the partial lifting of the stay under the Private Securities Litigation Reform Act, *see* Dkt. No. 128).

Defendants' position is based on, among other things, the recent ruling by Chancellor Leo E. Strine in *In re Massey Energy Company Derivative Litigation* (*In re Massey*), pending in the Delaware Court of Chancery. *In re Massey* involves derivative and class claims brought by former Massey shareholders—who essentially are prosecuting this securities litigation. *In re Massey* also involves allegations and claims regarding safety at Massey's mines and the scienter of Massey's former officers and directors that substantially overlap with the allegations and

7

claims in this litigation and the Government's criminal investigation. Chancellor Strine is no stranger to the facts underlying this case; he supervised a challenge to the proposed acquisition of Massey by Alpha Natural Resources, Inc., and, in connection with a preliminary injunction hearing he held, reviewed a dozen deposition transcripts and hundreds of documents, and, after conducting a four-hour hearing, issued a 79-page opinion which carefully considered the allegations made by the Delaware plaintiffs which echo the allegations made here. Moreover, since issuing his detailed opinion, Chancellor Strine has conducted numerous conferences as well as issued rulings on interlocutory appeals and in connection with managing the case in light of the ongoing investigation by the Government, including the most recent hearing he held on that subject on June 15, 2012. The cases are also tied in that there are orders and agreements in both *In re Massey* and this case which require any discovery produced in one litigation to be produced in the other litigation. See Order Granting Plaintiffs' Motion to Partially Lift the PSLRA Discovery Stay [Dkt. No. 128]; *In re Massey* So-Ordered Stipulation Staying Proceedings, dated September 12, 2011.

On June 15, 2012, Chancellor Strine held a hearing on the defendants' motion in *In re Massey* to extend the stay of proceedings in that case pending the completion of the Government's criminal investigation and Alpha Natural Resources, Inc.'s internal investigation and evaluation of the derivative claims asserted in that case. The Government authorized the defendants in that case to communicate and represent to Chancellor Strine that the Government would seek to intervene to maintain the stay of the *In re Massey* proceedings—the same way it did here—in the event the Chancellor was inclined to lift the stay of proceedings.

Chancellor Strine granted the defendants' motion and extended the stay of proceedings through January 15, 2013. Transcript of June 15, 2012 hearing ("Tr."), attached hereto as Exhibit B. In doing so, Chancellor Strine indicated that allowing discovery to proceed in *In re*

*Massey*, even in a limited or targeted piecemeal fashion, would result in a "side show" and an unwarranted and inappropriate distraction for the Government from its criminal investigation and would risk slowing the Government's investigation. Tr. at 20-21; 22; 33-34 ("Distracting the U.S. Attorney from completing their investigation by having them engage in side shows seems to me to be counterproductive to the plaintiffs themselves. And what we would be better off doing is, again, coming back with a responsible deadline, taking away any excuses that the prosecutors have, frankly, not to complete their mission in a timely fashion, showing that this is a forum—which it is—which is committed to the efficient and fair resolution of things, and prudently staying our hand.").

Moreover, Chancellor Strine expressed concern that limited and piecemeal discovery is inherently inefficient and that "there is the potential that it would have to be done twice and done over." Tr. at 33. In particular, in maintaining in place the discovery stay in *In re Massey*, Chancellor Strine rejected the very course of action Plaintiffs here would have this Court adopt, namely allowing Plaintiffs to propound discovery and forcing the Government to review and police that discovery to ensure that it does not run afoul or interfere with the Government's criminal investigation. Tr. at 22. On this subject Chancellor Strine noted:

> [T]he federal government is looking at exactly what [plaintiffs] are looking at, which is, were there senior members of management whose actions brought this about, I just have a hard time understanding how [the Government is] going to look at [plaintiffs] and, like, segment [plaintiff's] 47-document request [plaintiffs] will undoubtedly make and say, "Oh, yeah, these three are fine. These 22, we want to talk about." [The Government is] more likely to say, "There is a fairly complete overlap here. We don't want people doing all of this kind of stuff. It's a complication for us."
>
> \* \* \*
>
> So to just have [defendants] start producing documents, I guarantee you there will end up being discussions with the Department of Justice. That will take the time of the Department of Justice . . . That's time that the Department of Justice could otherwise be spending on getting to where they need to be. The sooner they get to where they need to be, the sooner this entire process can move forward to closure.

9

Tr. 17; 22. Therefore, Chancellor Strine concluded that the prudent course is to maintain the stay until January 15, 2013.

Defendants believe that the discovery stay in this case should be maintained for the same reasons that Chancellor Strine determined that the stay should be extended in *In re Massey*. Because of the reciprocal discovery orders in place in this case and *In re Massey*, lifting of the discovery stay in this case would potentially undermine Chancellor Strine's ruling extending the discovery stay in *In re Massey*. Maintaining the stay through January 15, 2013 would ensure efficiency and consistency in these two similar proceedings.

As noted below, the Government agrees with Defendants' position that the discovery stay should remain in place until January 15, 2013, consistent with Chancellor Strine's decision in *In re Massey*.

### IV. UNITED STATES' POSITION.

The United States respectfully seeks a stay of discovery in this civil matter until January 15, 2013, consistent with the stay entered in the parallel civil case pending in the Delaware Court of Chancery, discussed above. The United States' criminal investigation of circumstances relating to the Upper Big Branch mine is in a critical period, developing valuable information that became available only recently. A stay consistent with the one in the Delaware case would allow the United States to pursue those leads and make decisions on potential charges without interference from civil discovery. The requested stay also would avoid the inefficiency of inconsistent and duplicative discovery schedules in the parallel civil cases.

Allowing discovery sooner would pose serious risks to the United States' investigation. The subject matter of this civil case and the criminal investigation overlap heavily. Both concern essentially the same evidence. Some individual civil defendants, moreover, may be or may become subjects of the criminal investigation. When civil discovery goes forward, the civil

10

parties will gain an enormous amount of information not otherwise available to them, allowing them to anticipate in detail the direction of the criminal investigation. Civil discovery also would allow the civil parties to shape the record extensively for their own ends, making the United States' investigation—and possible prosecutions—more difficult.

Even limited civil discovery would hinder the United States by diverting time and effort from the criminal investigation. Already, the United States has devoted substantial time to monitoring this case and conferring with the parties. Much more time will be lost if the United States must review and analyze lengthy discovery requests over several months to identify and then litigate requests that threaten the criminal investigation. And if this civil action and the Delaware case go forward on two separate discovery schedules, the toll on the United States' investigation will be even greater (to say nothing of the burden on witnesses and document custodians).

The United States does not seek this stay lightly, and recognizes the importance of the civil parties' interests. But the broader public interest in the unimpeded progress of the criminal investigation deserves careful protection. Plaintiffs' position, in any event, will not suffer materially from the requested delay. On the contrary, there is a good chance it will improve, perhaps substantially, as a result of the United States' work. The balance of harms thus weighs heavily in favor of safeguarding the criminal inquiry.

All these reasons underlay the decision to stay discovery in the Delaware case until January 15, 2013. The United States supports a comparable stay here. If the United States is able to determine before the end of the requested stay that civil discovery can continue without harming its investigation, it will so advise both this Court and the court in the Delaware Action, allowing discovery sooner.

In the event the Court denies this request, the United States and the Plaintiffs have reached an alternative stipulation that would allow discovery starting November 1, 2012, under certain conditions. This November 1 alternative, however, would carry all the risks explained above. The United States has agreed to it as a fallback option only to avoid the prospect of immediate discovery and does not intend to suggest that the alternative stipulation is adequate to protect the criminal investigation.

DATED: July 3, 2012

 */s/ Joel H. Bernstein*
JOEL H. BERNSTEIN
**LABATON SUCHAROW LLP**
JOEL H. BERNSTEIN
IRA A. SCHOCHET
IRINA VASILCHENKO
FELICIA Y. MANN
140 Broadway, 34th Floor
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)

*Counsel for Lead Plaintiff Commonwealth of Massachusetts Pension Reserves Investment Trust and Co-Lead Counsel for the Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
PAUL J. GELLER
JACK REISE
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

**ROBBINS GELLER RUDMAN & DOWD LLP**
DENNIS J. HERMAN
CHRISTOPHER M. WOOD
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94101
Telephone: 415/288-4545
415/288-4534 (fax)
*Attorneys for Plaintiff David Wagner and Co-Lead Counsel for the Class*

**JAMES F. HUMPHREYS &
ASSOCIATES L.C.**
JAMES A. MCKOWEN
United Center, Suite 800
500 Virginia Street East
Charleston, WV 25301
Telephone: 304/347-5050
304/347-5055 (fax)

*Liaison Counsel for Lead Plaintiff Commonwealth of Massachusetts Pension Reserves Investment Trust and the Class*

**JOHN F. DASCOLI, PLLC**
JOHN F. DASCOLI (SBID #6303)
2442 Kanawha Boulevard, East
Charleston, WV 25311
Telephone: 304/720-8684
304/342-3651 (fax)

*Local Counsel for Plaintiffs*


/s/ Ricklin Brown
Ricklin Brown
**BAILEY & GLASSER, LLP**
209 Capitol Street
Charleston, WV 25301
(304) 414-3641

Mitchell A. Lowenthal
Victor L. Hou
Boaz S. Morag
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
One Liberty Plaza
New York, NY 10006
(212) 225-2000

*Attorneys for Defendant Massey Energy Company (now known as Alpha Appalachia Holdings, Inc.)*

/s/ A.L. Emch_____
A.L. Emch
Jonathan L. Anderson
**JACKSON KELLY PLLC**
1600 Laidley Tower
P. O. Box 553
Charleston, WV 25322
(304) 340-1000

/s/ Stuart W. Gold_____
Stuart W. Gold
Julie A. North
**CRAVATH, SWAINE & MOORE LLP**
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

Ronald S. Rolfe, Esq.
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

*Attorneys for Defendants James B. Crawford, E. Gordon Gee, Robert H. Foglesong, Richard M. Gabrys, Lady Barbara Thomas Judge, Dan R. Moore, and Stanley C. Suboleski*


/s/ Thomas V. Flaherty_____
Thomas V. Flaherty
Tammy R. Harvey
**FLAHERTY SENSABAUGH BONASSO PLLC**
P. O. Box 3843
Charleston, WV 25338-3843

*Attorneys for Defendants Don L. Blankenship, Baxter F. Phillips, Jr., Eric B. Tolbert, and Christopher Adkins*

14

/s/ Fred Westfall_____
Fred Westfall
Assistant United States Attorney
**U. S. ATTORNEY'S OFFICE**
P.O. Box 1713
Charleston, WV 25326
Telephone: 304/345-2200
Fax: 304/347-5104
E-mail: steven.ruby@usdoj.gov

*Attorney for the Unites States of America*