# Exhibit 12

## Compendium of Cases

*In re 3Com Corp. Sec. Litig.*,
    No. C-97-21083, slip op. (N.D. Cal. Mar. 9, 2001)

*In re Computer Sciences Corp. Sec. Litig.*,
    11-cv-0610, slip op. (E.D. Va. Sept. 20, 2013)

*In re DaimlerChrylser AG Sec. Litig.*,
    No. 00-0993, slip op. (D. Del. Feb. 5, 2004)

*In re Gen. Motors Corp. Sec. and Derivative Litig.*,
    No. 06-md-1759 (E.D. Mich. Jan. 6, 2009)

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*,
    No. 08-cv-10841, slip op. (S.D.N.Y. May 8, 2012)



ORIGINAL
FILED

MAR 0 9 2001

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re 3COM SECURITIES LITIGATION, | Master File No. C 97-21083 EAI |
| | <u>CLASS ACTION</u> |
| This Document Relates to:  ALL ACTIONS | ORDER AWARDING ATTORNEYS FEES AND REIMBURSEMENT OF EXPENSES |
| | [Regarding Docket No. 162] |

## I. INTRODUCTION

The settlement of this consolidated securities class action created an all-cash $259 million fund for distribution to the class members.  Plaintiffs' counsel now seeks an award of attorneys fees in the amount of 25% of the common fund and reimbursement of expenses.[1]  Notice was given to members of the class, both by direct mailing to 165,807 class members and by publication in *The Wall Street Journal*.  The motion came on for hearing before the court on February 23, 2001.  Having considered the moving papers submitted by plaintiffs' counsel, the supplemental papers submitted by plaintiffs' counsel in response to the court's January 29, 2001 order, the objection and

---

[1] Plaintiffs' counsel also filed a motion for approval of the settlement and a motion for approval of the plan of allocation of the settlement proceeds, and all three motions came on for hearing on February 23, 2001.  The court approved the settlement and plan of allocation at the February 23 hearing and took the motion for attorneys fees and reimbursement of expenses under submission.

1  memorandum of points and authorities of class member John H. Morrow, and the arguments of

2  counsel and Mr. Morrow at the hearing, and for good cause appearing, the motion for an award of

3  attorneys fees and reimbursement of expenses is granted in part, as set forth below.

4                                    **II. BACKGROUND**

5        This is a consolidated securities class action arising out of the merger between 3Com and U.S.

6  Robotics ("USR") in June of 1997.  The certified class includes all persons who purchased the

7  common stock of 3Com on the open market from April 23, 1997 through November 5, 1997.[2]  The

8  core of plaintiffs' case was 3Com's failure to disclose USR's loss of $160.3 million in the two

9  months preceding the June 1997 merger.  There were also allegations that defendants had falsely

10  reported the market demand for 56kbps (x2) modems.

11       There were substantial liability questions raised and strong defenses presented.  It was by no

12  means certain that plaintiffs would have established liability at trial or that any damages were caused

13  by the alleged misrepresentations.  Thus, there was a significant risk that plaintiffs could recover

14  nothing at all.  Assuming that liability was established, however, the estimates of recoverable

15  damages ranged from $60-750 million.

16       The settlement was reached in an arms-length negotiation that spanned several sessions.  It

17  resulted in an all-cash, interest bearing, settlement fund in the amount of $259 million to be

18  distributed to the class under the approved plan of allocation, after fees and expenses are deducted.

19  Class counsel seeks an award of attorneys fees in the amount of 25% of the fund (nearly $65

20  million), plus reimbursement of expenses in the amount of $1,189,767.15, plus reimbursement of

21  expenses to the two institutional lead plaintiffs in the amount of $38,461.09, plus interest.

22                              **III. ANALYSIS AND DISCUSSION**

23  A.    **Attorneys Fee Award**

24       The district court has the discretion to use either the percentage-of-the-fund or the

25

26       [2] The class excluded the defendants, members of the individual defendants' immediate families,
    any entity in which any defendant has or had a controlling interest, current and former directors and
    officers of 3Com and USR and members of their immediate families, and the legal representatives, heirs,

27  successors or assigns of any such excluded person or entity. Additionally, the shares of 3Com common
    stock that were acquired by shareholders of USR in connection with the merger were also excluded from

28  the class.

1   lodestar/multiplier method for determining an attorneys fee award in a common fund case.  In re

2   Washington Public Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1296 (9th Cir. 1994).  "[N]o

3   presumption in favor of either the percentage or the lodestar method encumbers the district court's

4   discretion to choose one or the other."  Id.  However, when determining attorneys fees, a district

5   court must ensure that the fee awards out of common funds be reasonable under the circumstances.

6   Id.  Regardless of which approach is used, the district court "must assume the role of fiduciary for

7   the class plaintiffs" because "the relationship between plaintiffs and their attorneys turns adversarial

8   at the fee-setting stage."  Washington Public Power, 19 F.3d at 1302.  Every dollar awarded to the

9   attorneys out of the settlement fund is a dollar removed from distribution to the class.

10       Under the lodestar/multiplier method, the court first calculates a lodestar figure representing

11   the number of hours reasonably incurred in the action multiplied by a reasonable hourly rate.  After

12   conducting a searching inquiry of the reasonableness of the hours expended and determining that the

13   claimed rates are reasonable within the appropriate legal community, the court may then consider a

14   variety of factors to establish the appropriate multiplier to apply to the lodestar in order to arrive at

15   an enhanced, or decreased, award.  The factors that may be relevant to a lodestar/multiplier analysis

16   include: 1) the time and labor required; 2) the novelty and difficulty of the questions involved; 3) the

17   requisite legal skill necessary; 4) the preclusion of other employment due to acceptance of the case;

18   5) the customary fee; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by

19   the client or circumstances; 8) the amount in controversy and the result obtained; 9) the experience,

20   reputation and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of

21   the professional relationship with the client; and 12) awards in similar cases.  Kerr v. Screen Extras

22   Guild, 526 F.2d 67, 70 (9th Cir. 1975), cert. denied, 425 U.S. 951 (1976).

23       Under the percentage of the fund method, by contrast, "the court simply awards the attorneys a

24   percentage of the fund sufficient to provide class counsel with a reasonable fee."  Hanlon v. Chrysler

25   Corp., 150 F.3d 1011, 1029 (9th Cir. 1998).  "This approach allow[s] for the cost of litigation to be

26   spread proportionately among each of the beneficiaries, prevent[s] unjust enrichment by class

27   counsel at the expense of the class, and yet provide[s] an incentive to the bar to pursue cases where

28   the prospect of compensation is uncertain and remote in time."  In re NASDAQ Market-Makers

1 | <u>Antitrust Litigation</u>,187 F.R.D. 465, 483 (S.D.N.Y. 1998).

2 |     The trend in common fund cases has been to move away from the lodestar/multiplier approach

3 | and towards the percentage of the fund method. <u>See</u> <u>In re NASDAQ Market-Makers Antitrust</u>

4 | <u>Litigation</u>,187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (tracing the history of attorney fee awards in

5 | common fund cases). Courts and commentators have recognized the drawbacks imposed by the

6 | lodestar method. Among other things, the lodestar method increases the workload of an already

7 | overtaxed judicial system, encourages inefficiency and protracted law and motion practice and

8 | otherwise unjustified legal work, creates a disincentive for early settlement, and creates a sense of

9 | mathematical precision that is unwarranted in terms of the realities of the practice of law. <u>See</u> <u>Court</u>

10 | <u>Awarded Attorney Fees, Report of the Third Circuit Task Force</u>, 108 F.R.D. 237, 246-49 (1986);

11 | <u>accord</u>; <u>In re Activision Securities Litigation</u>, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989); <u>NASDAQ</u>,

12 | 187 F.R.D. at 485. "The advantages of the percentage of the fund method over the lodestar method

13 | include ease of administration, permitting the judge to focus on 'a showing that the fund conferring a

14 | benefit on the class resulted from the lawyers' efforts' rather than collateral disputes over billing.

15 | This better respects the Supreme Court's admonition that '[a] request for attorney's fees should not

16 | result in a second major litigation.'" <u>NASDAQ</u>, 187 F.R.D. at 485 (citations omitted).

17 |     The percentage-of-the-fund method is the superior method for awarding attorneys fees in

18 | common fund cases. Accordingly, the court will exercise its discretion to award attorneys fees

19 | under the percentage-of-the-fund method in this case. The question remains, however, what

20 | percentage is appropriate under the circumstances. In the Ninth Circuit, the benchmark for a

21 | percentage award of attorneys fees is 25% of the settlement fund. <u>Paul, Johnson, Alston & Hunt v.</u>

22 | <u>Graulty</u>, 886 F.2d 268, 273 (9th cir. 1989); <u>Powers v. Eichen</u>, 229 F.3d 1249, 1256 (9th Cir. 2000).

23 | This benchmark may be adjusted "upward or downward to fit the individual circumstances of [the]

24 | case. Such an adjustment, however, must be accompanied by a reasonable explanation of why the

25 | benchmark is unreasonable under the circumstances." <u>Graulty</u>, 886 F.2d at 273. Circumstances

26 | warranting adjustment of the benchmark include situations where the percentage of the recovery

27 | would be too large or too small in light of the hours devoted to the case or other relevant factors.

28 | <u>Six (6) Mexican Workers v. Arizona Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990).

1   Adjustment may also be warranted where the shear size of the settlement fund may make a

2   benchmark percentage award unreasonable. "Reasonableness is the goal, and mechanical or

3   formulaic application of either method, where it yields an unreasonable result, can be an abuse of

4   discretion. A 25% benchmark might be reasonable in some cases, but arbitrary if the fund were

5   extremely large." In re Coordinated Pretrial Proceedings In Petroleum Products Antitrust

6   Litigation,109 F.3d 602, 607 (9th Cir. 1997). There is no necessary correlation between a particular

7   percentage and a reasonable fee, and particularly where the fund is large, "picking a percentage

8   without reference to all the circumstances, including the size of the fund, would be like picking a

9   number out of the air." WPPSS, 19 F.3d at 1297. Thus, while 25% is the benchmark, the court

10  cannot award 25% as a matter of course. Instead, because the court assumes the role of fiduciary for

11  the class at the fee setting stage, the court must carefully consider all of the relevant factors and

12  circumstances in order to ensure that a the fee awarded is reasonable under the circumstances.

13      1.      The Percentage Method

14      In this case, the benchmark 25% sought by plaintiffs' counsel would result in a fee award of

15  $64,750,000. The objector argues that the fee award should be much smaller, in the 6-10% range,

16  primarily because the benchmark percentage is simply too high where the settlement fund is so

17  large. Because of the large size of the settlement—which may be in part due to the large size of the

18  class—a 25% benchmark percentage award results in an astoundingly high legal fee.

19      Both the objector and plaintiffs' counsel have cited legal authorities to justify their respective

20  arguments that an appropriate fee under the circumstances should be either 6-10% or 25%,

21  respectively. The authorities cited by plaintiffs' counsel involving cases where the settlement funds

22  are greater than $75 million reflect attorney fee awards ranging from 14-37%. The cases cited by

23  the objector suggest that in such megafund situations, the attorney fee awards are typically in the 6-

24  10% range. The rationale for the lower percentage in larger fund cases may in part be explained by

25  economies of scale, recognizing that it generally is not 150 times more difficult to prepare, try, or

26  settle a $150 million case than it is to prepare, try or settle a $1 million case. The plethora of legal

27  authorities cited, however, serves more to confirm the court's wide discretion in this area than to

28  establish a guiding rule for decision.

1    The court has considered all of the circumstances of the litigation and the resulting settlement,

2    including the risks of the litigation, the strengths and weaknesses of plaintiffs' case, the substantial

3    result obtained by counsel, the skill of counsel, the arms length nature of the settlement, the

4    predominant response of the class members to the settlement (no objection) and to the proposed fee

5    (one objection), the contingent nature of the case, and the financial burden carried by counsel during

6    the litigation.  All of these factors justify a substantial attorneys fee award.  When the size of the

7    settlement is also considered, however, along with the hours expended by counsel, a 25% award

8    amounting to nearly $65 million may be unreasonable.  The Ninth Circuit has cautioned that the

9    benchmark 25% award may be unreasonable where the settlement fund is extremely large.

10   Petroleum Products, 109 F.3d at 607.  This is such a case.  The court finds that while 25% is

11   unreasonable under the circumstances, an 18% award would be both reasonable and appropriate.

12        2.     The Lodestar Cross-Check

13        As a further check on the reasonableness of the fee award, the court considers a thumbnail

14   lodestar analysis in order to ensure that the percentage awarded is reasonable under the

15   circumstances.  See In re Coordinated Pretrial Proceedings In Petroleum Products Antitrust

16   Litigation, 109 F.3d 602, 607 (9th Cir. 1997) (it is reasonable for the court to compare the lodestar

17   fee to the 25% benchmark as one measure of the reasonableness of the fee); Brooktree, 915 F. Supp.

18   at 199-200; Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 298 (N.D. Cal. 1995).

19        In response to the court's January 29, 2001 order, plaintiffs' counsel submitted additional

20   information identifying the attorneys and paralegals who performed work on the litigation and

21   summarizing the number of hours worked by each and their associated hourly rates.  The time

22   expended on the litigation by counsel and professional staff amounted to 21,651.06 hours.[3]  At their

23   ordinary billing rates, the resulting lodestar is $6,987,729.10.

24        Under the lodestar approach, courts consider a series of factors and then adopt a multiplier to

25

26   [3] Thirty law firms participated on behalf of the plaintiffs and 278 legal professionals performed
     services in the course of the representation.  On a per-firm basis, the hours ranged from 12 to 5,292 total
     hours; on a per-attorney basis, the hours ranged from .1 to 2,016.75.  The billing rates for attorneys
27   ranged from $190-535 per hour, and the mean hourly rate was $362.50.  The hourly rate for professional
     staff ranged from $25-180, and the mean rate was $102.50.  Overall, the blended rate, calculated by
28   dividing the total lodestar by the total number of hours is $322.74 per hour.

1   apply to the lodestar figure to determine the ultimate fee to be awarded.  The requested fee in this

2   case reflects a multiplier of approximately 9.27, which, while not unprecedented, is at the higher end

3   of the scale.  See Van Vranken, 901 F. Supp. at 298 (noting that multipliers in the 3-4 range are

4   common in lengthy and complex class action litigation).  Thus, the lodestar cross-check is an

5   indication that the 25% benchmark sought by counsel is too high under all of the circumstances.

6   However, the same lodestar cross-check demonstrates that an award of 18%—reflecting a multiplier

7   of 6.7—is more reasonable.  While still a high multiplier, the overall circumstances of this case,

8   particularly the risks of the litigation and the superb results achieved by class counsel in settlement,

9   justify a multiplier greater than the common range.

10              a.    The Results Obtained

11          The result achieved is a significant factor to consider in making a fee award.  Hensley v.

12   Eckerhart, 461 U.S. 424, 436 (1983) (the most critical factor is the degree of success obtained).  In

13   the present action, the settlement is an extraordinary result for the members of the class.  The

14   damage estimates ranged from $60-$750 million, assuming liability was established, but the risk of a

15   zero recovery was not insignificant.  Thus, the $259 million all-cash settlement allows the class

16   members to recover a substantial amount of the damages that they would recover if successful at

17   trial.  Additionally, the settlement appears to be the third largest recovery ever obtained in a

18   securities class action, and it is the largest settlement in the Ninth Circuit since the enactment of the

19   Private Securities Litigation Reform Act of 1995.   Thus, this factor weighs in favor of a substantial

20   award of fees, and under the lodestar analysis, would command a high multiplier.

21              b.    Risks of Litigation

22          The risk of the litigation is also an important factor to consider in determining an appropriate

23   fee award.  WPPSS, 19 F.3d at 1299-1301.  In this case, there were substantial risks that plaintiffs

24   would be unable to establish liability, loss causation or damages.

25              1)    The Liability Risks

26          In order to prevail in this securities fraud action, plaintiffs would have had to prove that the

27   defendants made an untrue statement of a material fact or omitted to state a material fact necessary

28   in order to make the statements made, in the light of the circumstances in which they were made, not

1   misleading.  15 U.S.C. § 78u-4(b)(1).  Plaintiffs would also have had to establish that defendants

2   acted with scienter, which in the context of securities fraud, is a "mental state embracing intent to

3   deceive, manipulate, or defraud." See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193-94 n.12, 96 S.

4   Ct. 1375, 1381 n.12, 47 L.Ed.2d 668 (1976).  There was a significant risk that plaintiffs would have

5   been unable to prove scienter.

6           First, defendants vigorously contested liability throughout the litigation and appeared to be

7   prepared to defend on the basis that their merger accounting fully complied with SEC regulations

8   setting forth the procedure to follow for combining fiscal periods when the two companies being

9   merged had different, non-contiguous fiscal years.  Moreover, according to defendants, the decision

10  not to include USR's April and May results in 3Com's financial statements was approved by

11  3Com's auditors and had been made long before USR's April and May 1997 results were known.

12          Plaintiffs also faced substantial risks with respect to the alleged accounting improprieties that

13  occurred during USR's March Quarter, in particular with respect to USR's pre-merger revenue

14  recognition practices.  USR's auditors had approved a number of the practices which plaintiffs

15  alleged were improper, and after the merger, 3Com's auditors concluded that any accounting errors

16  that occurred during the March Quarter were not material when measured by the combined results of

17  3Com and USR.  Thus, at trial, 3Com would have argued that it was entitled to rely on the advice of

18  its independent auditors that the USR March Quarter results did not need to be restated.  Defendants

19  also appear to have been prepared to defend each of the challenged transactions on a case-by-case

20  basis, which would have required plaintiffs to overcome serious obstacles to establish that each

21  defendant had knowledge of each of the particular transactions.   Thus, there was a significant risk

22  that a jury could determine that the 3Com merger accounting complied with Generally Accepted

23  Accounting Principles and that the defendants were entitled to rely on the advice of their

24  accountants when making these accounting decisions.

25          Finally, plaintiffs faced substantial challenges to establish liability on their allegations that

26  defendants had misrepresented the demand for and sales of one of their key products, the 56kbps

27  (x2) modem.  While plaintiffs alleged that defendants had "stuffed the channel" with x2 modems

28  during the March Quarter, defendants forcefully argued that stuffing the channel was USR's regular

1   business practice and was the strategy USR had used to become the world's dominant modem

2   manufacturer.

3         The risks of failing to establish liability, and in particular that the defendants acted with the

4   requisite scienter, were significant.

5                    2)        Loss Causation and Damages Risks

6         Even if plaintiffs were to prevail and establish liability, plaintiffs nevertheless faced significant

7   risks relating to their ability to establish damages, materiality and loss causation.  First, there was a

8   substantial chance that plaintiffs would not be able to recover for the non-disclosure of the $160

9   million loss that formed the core of plaintiffs' case.  Defendants contended that the April and May

10  loss was disclosed in a September 1997 conference call, following the release of 3Com's quarterly

11  results.  However, there was no statistically significant decline in the price of 3Com stock following

12  the conference call.  The $160 million loss was also disclosed on October 14, 1997 upon the filing of

13  3Com's Form 10-Q, followed less than a week later by articles in the *San Francisco Chronicle* and

14  *The New York Times* reporting on the defendants had engaged in "accounting alchemy" and had

15  manipulated USR's financial results by stuffing the channel with inventory.  Once again, however,

16  there was no statistically significant decline in the price of 3Com stock after these disclosures; to the

17  contrary, the price of 3Com stock actually increased following the publication of one of the articles.

18  Thus, there was a substantial risk that a jury could find that USR's April and May 1997 results were

19  not material to 3Com's investors and that the failure to disclose the $160 million loss did not cause

20  any damages.

21        There were also substantial questions raised regarding the extent to which modem sales had

22  declined during the class period.  There was evidence that modem sales did not decline until late in

23  the class period, in October 1997, after a standard for the 56kbps technology unexpectedly failed to

24  be set in late September.  Thus, defendants could have presented strong defensive arguments at trial.

25        Finally, to the extent there was a decline in the price of 3Com stock towards the end of the

26  class period, there were substantial questions raised regarding what portion of the overall stock

27  decline was attributable to the alleged fraud rather than to general market conditions that existed,

28  including the Asian economic crisis, increased competition from others, and the lack of an industry

1  standard.

2     Thus, there was a very real and substantial risk that plaintiffs would not prevail at trial, in

3  which case plaintiffs would have recovered nothing and counsel would not receive any

4  compensation for their services. Nonetheless, counsel successfully negotiated a substantial

5  favorable settlement for the class, meriting an award of significant attorneys fees.

6     Taken together, the results achieved in view of the risks associated with the litigation justify a

7  lodestar multiplier of between 6 and 7. In this case, that multiplier would result in fees in the range

8  of $42-49 million.

9     3.     The Fee Award

10    Having considered all of the foregoing, the court is persuaded that the 25% benchmark is

11  unreasonable under the circumstances and that a lower percentage should be awarded. Considering

12  the outstanding results achieved, however, the court is not inclined to award a percentage fee as low

13  as that suggested by the objector. Instead, under the totality of the circumstances and mindful of its

14  role as fiduciary guardian of the interests of the class, the court finds that a reasonable and

15  appropriate fee is 18% of the fund, or $46,620,000. An 18% award is also reasonable in

16  consideration of the lodestar, reflecting a multiplier of 6.67. This multiplier is admittedly higher

17  than the typical range, but it would be appropriate here where counsel's efforts have achieved

18  extraordinary results for the class at considerable risk.

19    The downward departure from the benchmark should not be read or understood to imply any

20  criticism of plaintiffs' counsel, nor should a percentage award below the benchmark be considered

21  as punishment rather than as reward to counsel. To the contrary, counsel's representation was

22  excellent, and as discussed above, the results they achieved were substantial and extraordinary.

23  Counsel deserves to be amply rewarded. However, after carefully weighing the relevant factors in

24  the court's capacity as fiduciary for the class members, the court finds that an award of $46,620,000

25  reasonable and appropriate.

26  **B.     Reimbursement of Expenses**

27     1.     Costs and Expenses Actually Incurred by Plaintiffs' Counsel

28  Plaintiffs' counsel also seeks reimbursement of the expenses incurred in an aggregate amount

1   of $1,189,767.15. It is appropriate to reimburse counsel for reasonable expenses that were incurred

2   in the course of representing the class, provided that the expenses are of a type that ordinarily would

3   be billed by attorneys to paying clients. Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994).

4   Counsel has submitted declarations from each of the law firms identifying the expenses and attesting

5   that the expenses were actually incurred. The court has reviewed the declarations and finds that the

6   expenses should be reimbursed in full out of the settlement fund.

7         2.     Costs and Expenses of Lead Plaintiffs

8        The lead institutional plaintiffs, the Louisiana School Employees Retirement System

9   ("LSERS") and the Louisiana Municipal Police Employees Retirement System ("LMPERS"), have

10  also submitted a request for reimbursement of expenses under 15 U.S.C. §78u-4(a)(4). That section

11  of the PSLRA allows for representative parties to be awarded reimbursement of their reasonable

12  costs and expenses, including lost wages, that were directly related to the representation of the class.

13  Specifically, LMPERS and LSERS seek an award of $38,461.09, of which $10,161.09 constitutes

14  litigation related travel expenses of their General Counsel, Mr. Roche, and $28,300 constitutes that

15  portion of Mr. Roche's salary corresponding to the time he spent on matters associated with the

16  litigation. Roche Decl. ¶ 3, 5. The lead plaintiffs characterize the salary reimbursement as "lost

17  wages" that are recoverable under the act, but cite no case law in support of their interpretation.

18       The court has not discovered any case law construing "lost wages" as used in the statute.

19  However, the plain meaning of the statutory phrase connotes income that was lost or foregone as a

20  direct result of attending to the litigation as a representative party. The phrase does not embrace

21  reimbursement of salary that would have been paid anyway, regardless of the nature of the work

22  performed by Mr. Roche on behalf of his employers. Thus, the statute does not authorize the partial

23  reimbursement of in-house counsel's salary.

24       Therefore, the court will award to LMPERS and LSERS only the $10,161.09 in out-of-pocket

25  expenses and will disallow the $28,300 in claimed wages.

26        3.     Expenses of Objector John Morrow

27       Finally, the court considers the reimbursement of the expenses incurred by the objector,

28  Mr. Morrow. Mr. Morrow himself has not affirmatively sought reimbursement of his expenses or an

1   award of fees for his participation.  The court, however, raised the issue <u>sua sponte</u> at the February

2   23, 2001 hearing and authorized Mr. Morrow to submit a declaration to substantiate the expenses he

3   incurred.  Mr. Morrow's declaration establishes that he incurred $1,339.63 in expenses in

4   connection with objecting to the motion for attorneys fees, primarily for traveling to San Jose,

5   California to attend the hearing.  The expenses are reasonable and are approved.

**CONCLUSION**

7          For the foregoing reasons, IT IS HEREBY ORDERED THAT:

8          1.          The court hereby awards Representative Plaintiffs' Counsel attorneys' fees of 18% of

9   the settlement fund and reimbursement of litigation expenses in the amount of $1,189,767.15,

10  together with interest earned thereon for the same time period and at the same rate as that earned on

11  the settlement fund until paid.  Said fees and expenses shall be allocated among the Representative

12  Plaintiffs' Counsel in a manner which, in Plaintiffs' Lead Counsel's good faith judgment, reflects

13  each such Representative Plaintiff's Counsel's contribution toward the institution, prosecution, and

14  resolution of the litigation.  The awarded attorneys' fees and expenses shall be paid to Plaintiffs'

15  Lead Counsel immediately after the date this Order is executed subject to the terms, conditions, and

16  obligations of the Stipulation of Settlement, and in particular, ¶7.2 thereof, which terms, conditions

17  and obligations are incorporated herein.

18         2.          The court finds that an award of attorneys' fees of 18% of the Settlement Fund is fair

19  and reasonable under the percentage-of-the-fund method.  The settlement was obtained largely

20  through the efforts of plaintiffs' counsel.  Plaintiffs' counsel diligently prosecuted this litigation for

21  approximately three years with a substantial risk of no recovery for the class, and obtained an

22  excellent result.  Representative Plaintiffs' counsel have received no compensation during the three

23  years of the litigation, and any fee award has always been at risk and completely contingent on the

24  result achieved.  The litigation was complex, and involved substantial issues of law, including the

25  uncertain interpretation and application of the Private Securities Litigation Reform Act of 1995.

26  Additionally, the litigation presented difficult questions of proof on issues including liability,

27  materiality, loss causation, and damages.

28         3.          Objector Morrow is awarded $1,339,63, to be paid out of the settlement fund to

1   reimburse him for the reasonable costs and expenses he incurred in objecting to the motion for an

2   award of attorneys fees.

3       4.      LMPERS and LSERS, the two institutional lead plaintiffs, are awarded $10,161.09,

4   to be paid out of the settlement fund, to reimburse them for the reasonable costs and expenses they

5   incurred in representing the class.

6      Lead counsel for the plaintiffs shall serve a copy of this order on counsel of record for the

7   parties.

8      IT IS SO ORDERED.

9

10   DATED:    MAR 0 9 2001       EDWARD A. INFANTE

11                             Edward A. Infante

                                United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Copy of Order Mailed on ___MAR 0 6 2001___

**Counsel for Plaintiff:**

Milberg Weiss Bershad Hynes & Lerach LLP
William S. Lerach
Keith F. Park
600 West Broadway, Suite 1800
San Diego, CA 92101

Milberg Weiss Bershad Hynes & Lerach LLP
Patrick J. Coughlin
100 Pine Street, Suite 2600
San Francisco, CA 94111

Bernstein Litowitz Berger & Grossman LLP
Max W. Berger
1285 Avenue of the Americas, 33rd Floor
New York, NY 10019

Barrack, Rodos & Bacine
Edward M. Gergosian
402 West Broadway, Suite 850
San Diego, CA 92101

Kaplan Kilsheimer & Fox LLP
Robert N. Kaplan
805 Third Avenue, 22nd Floor
New York, NY 10022

Kaplan Kilsheimer & Fox LLP
Laurence D. King
100 Pine Street, Suite 2600
San Francisco, CA 94111

**Counsel for Defendant**
Wilson Sonsini Goodrich & Rosati PC
Boris Feldman
650 Page Mill Road
Palo Alto, CA 94304

**Objector**
John H. Morrow
Bradley Arant Rose & White LLP
2001 Park Place, Suite 1400
Birmingham, AL 35203-2736

14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division



IN RE COMPUTER SCIENCES
CORPORATION SECURITIES LITIGATION

Civ. A. No. 1:11-cv-610-TSE-IDD

**ORDER AWARDING ATTORNEYS'
FEES AND EXPENSES**

On September 19, 2013, a hearing having been held before this Court to determine,

among other things, whether and in what amount to award Class Counsel in the above-captioned

consolidated securities class action (the "Action"), on behalf of all plaintiff's counsel, fees and

litigation expenses directly relating to its representation of the Settlement Class. All capitalized

terms used herein having the meanings as set forth and defined in the Stipulation and Agreement

of Settlement (the "Stipulation"), dated as of May 14, 2013. The Court having considered all

matters submitted to it at the hearing and otherwise; and it appearing that a notice of the hearing

substantially in the form approved by the Court (the "Settlement Notice") was mailed to all

reasonably identified Persons who purchased or acquired Computer Sciences Corporation

common stock between August 5, 2008 and December 27, 2011, inclusive, and who were

allegedly damaged thereby; and that a summary notice of the hearing (the "Summary Settlement

Notice"), substantially in the form approved by the Court, was published in *The Wall Street

Journal* and transmitted over *PR Newswire*; and the Court having considered and determined the

fairness and reasonableness of the award of attorneys' fees and litigation expenses requested;

NOW, THEREFORE, IT IS HEREBY ORDERED, this 20th day of September,

2013 that:

1.    The Court has jurisdiction over the subject matter of this Action and over all Parties to the Action, including all Settlement Class Members and the Claims Administrator.

2.    Notice of Class Counsel's application for attorneys' fees and payment of litigation expenses was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the application for attorneys' fees and expenses met the requirements of Rules 23 and 54 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), due process, and constituted the best notice practicable under the circumstances and due and sufficient notice to all persons and entities entitled thereto.

3.    Class Counsel is hereby awarded attorneys' fees in the amount of $19,012,500, plus interest at the same rate earned by the Settlement Fund, and payment of litigation expenses in the amount of $3,059,815, plus interest at the same rate earned by the Settlement Fund, which sums the Court finds to be fair and reasonable. The Court notes that Plaintiff's counsel's air travel was only at coach rates.

4.    The award of attorneys' fees and litigation expenses may be paid to Class Counsel from the Settlement Fund subject to the terms, conditions, and obligations of the Stipulation, which terms, conditions, and obligations are incorporated herein.

5.    In making this award of attorneys' fees and payment of litigation expenses to be paid from the Settlement Fund, the Court has analyzed the factors considered within the Fourth Circuit and found that:

(a)    Through the efforts of Class Counsel, the Settlement has created a fund of $97,500,000 in cash that returns a significant percentage of the estimated maximum alleged

2

damages and that numerous Settlement Class Members, who submit eligible Proofs of Claim, will benefit from;

      (b)     The Action involves complex and unique factual and legal issues, and, in the absence of settlement, would involve further lengthy proceedings with uncertain resolution if the case were to proceed to trial;

      (c)     Plaintiff's counsel have devoted more than 34,457 hours to the Action, with a lodestar value of $16,031,271, to achieve the Settlement;

      (d)     The requested fee would result in a multiplier of 1.185.

      (e)     Plaintiff's counsel conducted the Action and achieved the Settlement with skillful and diligent advocacy;

      (f)     Labaton Sucharow LLP and Patton Boggs LLP pursued the Action on a contingent basis, having received no compensation during the Action, and any fee award has been contingent on the result achieved;

      (g)     The Action has been litigated efficiently under a Court-ordered schedule;

      (h)     The amount of attorneys' fees awarded are fair and reasonable and comparable to fee awards approved in cases with similar recoveries;

      (i)     Class Counsel has experience representing the Class Representative, Ontario Teachers' Pension Plan Board, for nearly a decade;

      (j)     The requested attorneys' fees and litigation expenses have been reviewed and approved as fair and reasonable by Class Representative, a sophisticated institutional investor that was directly involved in the prosecution and resolution of the Action and who has a substantial interest in insuring that any fees paid to Class Counsel are duly earned and not excessive;

      (k)     Notice was disseminated to putative Settlement Class Members stating that Class Counsel would seek an award of attorneys' fees in an amount not to exceed 19.5% of the Settlement Fund, and payment of litigation expenses incurred in connection with the prosecution of the Action in an amount not to exceed $3,350,000, plus interest, and no Settlement Class Member has filed an objection to the fees and expenses requested by Class Counsel;

6.     In accordance with 15 U.S.C. §78u-4(a)(4) of the PSLRA, a court may approve an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." Pursuant to 15 U.S.C. §78u-4(a)(4), the Court hereby awards Class Representative reimbursement of its reasonable costs for the time devoted to the matter ($28,881) and expenses ($32,024), which included air travel only at coach rates, directly related to its representation of the Settlement Class in the total amount of $60,905.

7.     Any appeal or any challenge affecting this Court's approval of any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment entered with respect to the Settlement.

8.     Exclusive jurisdiction is hereby retained over the subject matter of this Action and over all Parties to the Action, including the attorneys' fee award, its payment, and the administration and distribution of the Settlement proceeds to Settlement Class Members.

9.     In the event that the Settlement is terminated or does not become Final or the

Effective Date does not occur in accordance with the terms of the Stipulation, this order shall be

rendered null and void to the extent provided by the Stipulation and shall be vacated in

accordance with the Stipulation

Dated: _September 20_, 2013

                                     T.S. Ellis, III, U.S.D.J.

                                     /s/

                                   T. S. Ellis, III
                                   United States District Judge



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2004 FEB -5 PM 3: 25

|  |  |
|---|---|
| IN RE DAIMLERCHRYSLER AG<br>SECURITIES LITIGATION | )<br>)<br>)<br>) Master File No. 00-0993 (KAJ) |

## ORDER AWARDING LEAD
### PLAINTIFFS' COUNSELS' ATTORNEYS' FEES
### AND REIMBURSEMENT OF EXPENSES

THIS MATTER having come before the Court on December 5, 2003, on the application of Lead Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of expenses incurred in the above-captioned action; the Court, having considered all papers filed and proceedings conducted herein, having found the settlement of this action to be fair, reasonable and adequate and otherwise being fully informed in the premises and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. All of the capitalized terms used herein shall have the same meanings as set forth in the Stipulation of Settlement dated September 29, 2003 (the "Stipulation").

2. This Court has jurisdiction over the subject matter of this application and all matters relating thereto, including all Members of the Settlement Class who have not timely and validly requested exclusion.

3. The Court hereby awards Lead Plaintiffs' Counsel reimbursement of $2,908,451.15 million in litigation expenses, plus one-half the cost of the Special Master in participating in and preparing a report on the settlement. The Court also awards Lead Plaintiffs' Counsel attorneys' fees in the amount of $66,845,600, which is 22.5% of the Settlement Funds

(less expenses), together with the interest earned thereon for the same period and at the same rate as that earned on the Settlement Fund until paid. Said fees and expenses shall be allocated among plaintiffs' counsel by Lead Counsel in a manner which, in Lead Counsel's good faith judgment, reflects each such counsel's contribution to the institution, prosecution and resolution of the Litigation. The Court finds that the amount of fees awarded is fair and reasonable under the "percentage-of-recovery" method.

4.   The awarded attorneys' fees and expenses shall be paid to Lead Counsel subject to the terms, conditions and obligations of the Stipulation and in particular ¶¶ 22-24 thereof, which terms, conditions and obligations are incorporated herein.

IT IS SO ORDERED.

DATED: ___Feb. 5___, 2004

_____
THE HONORABLE KENT A. JORDAN
UNITED STATES DISTRICT JUDGE

(311966)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE GENERAL MOTORS CORP.     MDL No. 1749
SECURITIES AND DERIVATIVE     Master Case No. 06-md-1749
LITIGATION     Hon. Gerald E. Rosen
     This Document Relates to:
     2:06-cv-12258-GER
     2:06-cv-12259-GER

_____ /

### ORDER APPROVING ATTORNEYS' FEES AND EXPENSES
### AND AWARDING COSTS AND EXPENSES TO NAMED AND LEAD PLAINTIFFS

This matter came on for hearing on December 22, 2008 (the "Final Approval Hearing"),

and for a supplemental hearing on January 6, 2009 (the "Supplemental Fairness Hearing") to

consider any objections received as a result of the Supplemental Notice to the Class ordered by

this Court on December 15, 2008, upon the application of the parties for approval, pursuant to

Rule 23(e) of the Federal Rules of Civil Procedure, of the Settlement set forth in the Stipulation

and Agreement of Settlement dated September 16, 2008 (the "Stipulation") resolving the above-

captioned action (the "GM Securities Action"), and which, along with the defined terms therein,

is incorporated herein by reference; and for approval of Co-Lead Counsels' Motion for (I) Award

of Attorneys' Fees and Reimbursement of Expenses (the "Fee Request") and for (II) Awards to

Lead and Named Plaintiffs (the "Costs Awards"), and the Court having considered all papers and

arguments submitted in favor of and in opposition to the Fee Request and Costs Awards, and

otherwise being fully informed in the premises and good cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.     The Court, for purposes of this Order, adopts all defined terms as set forth in the

Stipulation.

2.      Pursuant to and in compliance with Rule 23 of the Federal Rules of Civil

Procedure, the Court hereby finds that notice of the Final Approval Hearing (the "Notice") was

given in accordance with the Court's Order of Preliminary Approval and for Notice and Hearing

dated September 23, 2008 (the "Preliminary Approval Order") and its Order dated December 16,

2008 regarding the Supplemental Notice to members of the Class as certified by the Court in the

Preliminary Approval Order, advising them of Co-Lead Counsels' intention to seek (1) the Fee

Request and (2) the Costs Awards, and of their right to object thereto, and a full and fair

opportunity was accorded to all Class Members to be heard with respect to the Fee Request and

the Costs Awards, and that said notice was the best notice practicable and was adequate and

sufficient.

3.      In response to the Notice, there were the following objections to the Fee Request

filed or asserted by apparent class members, as follows: (1) the Pennsylvania State Employees'

Retirement System ("SERS"); (2) Independent Fiduciary Services ("IFS"), which is the fiduciary

for several trusts through which GM employee benefit plans are funded; (3) Mildred Terry

Warren; (4) Gregg Geanuracos;  (5) Larry Banks; (6) Hans Klar; (7) Merle and Martha Likins;

(8) Rick Jasinski; (9) Glenn Brewer and Elise Fitzgerald; (10) Masako Nakata; (11) Michael and

Babette Rinis; (12) Paul Garrett; (13) Peter Spitalieri; and (14) Norman Mintz (collectively, the

"Fee Objectors"), and of these, IFS was the only objector to complain about the Costs Awards.

4.      The Court has fully considered the submissions and arguments made in favor of

and opposition to the Fee Request and the Costs Awards.

5.      Co-Lead Counsel are hereby awarded: (i) attorneys' fees of 15% of the Gross

Settlement Fund, plus interest earned thereon at the same rate as the Class; and (ii)

reimbursement of litigation costs and expenses in the amount of $1,524,929.02, plus interest

earned thereon at the same rate as the Class. Immediately after the date this Order is entered, the awarded attorneys' fees and expenses shall be paid from the Gross Settlement Fund to Co-Lead Counsel in accordance with the terms, conditions, and obligations set forth in the Stipulation. The awarded attorneys' fees shall be allocated to the various other plaintiffs' counsel by Co-Lead Counsel in amounts that in Co-Lead Counsels' sole discretion reflect the work performed by each non-lead counsel, as well as each non-lead counsel's contribution to the institution, prosecution and resolution of this case.

6. Lead Plaintiffs Deka Investment GmbH and Deka International S.A. Luxembourg are collectively awarded $184,205, a fair and reasonable amount under the circumstances, as reimbursement for their active assistance in prosecuting this matter and for their costs incurred in representing the Class. The Court directs that such award be paid from the Gross Settlement Fund.

7. The seven Additional Named Plaintiffs, Claudia Polvani, Costantino Forlano, J. Bryan Dewell, Dan Cleveland, Mark and Ruth Koppelman, Max Marcus Katz on behalf of the Max Marcus Katz Pension & Profit Sharing Plan dated 12/31/78, and Frankfurt -Trust Investment GmbH are awarded $1,000 each as reimbursement for his, her, or its costs incurred in connection with acting as a plaintiff and Class Representative in this case, which amounts the Court finds to be fair and reasonable.

8. Based upon the evidence and pleadings submitted to the Court, the records at the Final Fairness Hearing and the Supplemental Fairness Hearing and all papers on file in this matter, the Court believes, and hereby finds, that the attorneys' fees and reimbursement of expenses awarded herein are fair and reasonable under the circumstances of the GM Securities Action. In making this award, the Court has considered the factors considered by courts in the

Sixth Circuit to be relevant to the determination of an appropriate fee in common fund cases and finds that:

(a)     the Settlement provides for an excellent recovery, one of the largest securities class action settlements ever obtained within this Circuit, with a cash value of $303,000,000, plus interest, and that numerous Class Members will benefit from the Gross Settlement Fund created through the efforts of Co-Lead Counsel;

(b)     Over 829,000 copies of the Notice were disseminated to putative Class Members stating that Co-Lead Counsel were moving for an award of attorneys' fees of up to 19% of the Gross Settlement Fund, plus interest earned at the same rate as the Class, and for reimbursement of additional costs and expenses in an amount not to exceed $1.75 million, plus interest earned at the same rate as the Class, with the attorneys' fees and expenses awarded herein being less than the maximum fees or expense reimbursements requested by Co-Lead Counsel as set forth in the Notice;

(c)     The Court has found the Settlement to be fair, reasonable and adequate;

(d)     Co-Lead Counsels' Fee Request as a percentage of the Gross Settlement Fund is consistent with the prevailing law of the Sixth Circuit;

(e)     The GM Securities Action involved numerous difficult issues related to liability and damages, and there was a substantial risk of a lesser recovery or no recovery for the Class;

(f)     Co-Lead Counsel achieved this Settlement with skill, perseverance, and diligent advocacy for the Class;

(g)     Had Co-Lead Counsel not achieved the Settlement, there would remain a significant risk that Lead Plaintiffs and the Class may have recovered less or nothing from

Defendants, particularly from GM, which has needed a massive multi-billion dollar federal bailout;

(h)      Co-Lead Counsel pursued this Action on a contingent basis, having received no compensation during the litigation in which they and other plaintiffs' counsel invested almost 25,000 hours of time, and any fee award has always been at risk and completely contingent on the result achieved;

(i)      The time spent working on this case was at the expense of time that could have been spent on other cases;

(j)      The Fee Request is supported by the Court-appointed institutional Lead Plaintiffs;

(k)      A fee award under the percentage of the fund method is appropriate, and an award of 15% of the common fund recovered for the Class in attorneys' fees is reasonable and, in fact, less than awards in similarly complex cases in this jurisdiction;

(l)      Lead Counsels' request for reimbursement of expenses is reasonable in light of Lead Counsels' duties to ensure full prosecution of the claims alleged in the Complaint; and

(m)      This Settlement was negotiated at arm's-length, and no evidence of fraud or collusion has been presented.

9.      There is no just reason for delay in the entry of this Order, and immediate entry of

this Order by the Clerk of the Court is expressly directed.

s/Gerald E. Rosen
Gerald E. Rosen
Chief United States District Judge

Dated:  January 6, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on
January 6, 2009, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

PUBLIC EMPLOYEES' RETIREMENT
SYSTEM OF MISSISSIPPI, et al.,
Individually and On Behalf of All Others
Similarly Situated,

Plaintiffs,

v.

MERRILL LYNCH & CO. INC., et al.,

Defendants.

Civil Action No. 08-cv-10841-JSR-JLC
ECF case



 **[PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND EXPENSES**

This matter came on for hearing on March 21, 2012 (the "Settlement Hearing") on Lead

Counsel's motion to determine, among other things, whether and in what amount to award Lead

Counsel in the above-captioned consolidated securities class action (the "Action") attorneys' fees

and reimbursement of Litigation Expenses.

The Court having considered all matters submitted to it at the Settlement Hearing and

otherwise; and it appearing that notice of the Settlement Hearing substantially in the form

approved by the Court was mailed to all Settlement Class Members who or which could be

identified with reasonable effort, except those persons or entities excluded from the definition of

the Settlement Class, and that a summary notice of the hearing substantially in the form approved

by the Court was published in *The Wall Street Journal* and was transmitted over the *PR*

*Newswire* pursuant to the specifications of the Court; and the Court having considered and

determined the fairness and reasonableness of the award of attorneys' fees and Litigation

Expenses requested.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated December 5, 2011 (ECF No. 174-1) (the "Stipulation") and all terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3.      Notice of Lead Counsel's application for attorneys' fees and reimbursement of Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort.  The form and method of notifying the Settlement Class of the application for attorneys' fees and expenses satisfied the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, Section 27 of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 and the Rules of the Court, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.      Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of  17  % of the Settlement Fund and $  3,280,523. 87     in reimbursement of Litigation Expenses (which fees and expenses shall be paid to Lead Counsel from the Settlement Fund), which sums the Court finds to be fair and reasonable.  The award of attorneys' fees shall be allocated among Plaintiffs' Counsel in a manner which, in the opinion of Lead Counsel, fairly compensates Plaintiffs' Counsel for their respective contributions in the prosecution and settlement of the Action.[1]

5.      Lead Counsel shall be paid 50% of the attorneys' fees awarded and 100% of the approved expenses immediately upon entry of this Order.  Payment of the balance of the

---

[1] Plaintiffs' Counsel shall mean Lead Counsel Bernstein Litowitz Berger & Grossmann LLP; Kessler Topaz Meltzer & Check, LLP; Berman DeValerio; and Pond Gadow & Tyler.

2

attorneys' fees awarded shall be made to Lead Counsel when distribution of the Net Settlement Fund to claimants has been very substantially completed.

6.      In making this award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a)      The Settlement has created a fund of $315 million in cash that has been funded into an escrow account for the benefit of the Settlement Class pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Proof of Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

(b)      The fee sought by Lead Counsel has been reviewed and approved as fair and reasonable by the Court-appointed Lead Plaintiff, a sophisticated institutional investor that was substantially involved in all aspects of the prosecution and resolution of the Action;

(c)      Copies of the Notice were mailed to over 10,000 potential Settlement Class Members or their nominees stating that Lead Counsel would apply for attorneys' fees in an amount not to exceed 17% of the Settlement Fund and reimbursement of Litigation Expenses in an amount not to exceed $4 million, plus interest earned at the same rate and for the same period as earned by the Settlement Fund, and there are no objections to the requested award of attorneys' fees or Litigation Expenses;

(d)      Plaintiffs' Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(e)      The Action involves complex factual and legal issues and was actively prosecuted for nearly three years;

3

(f)    Had the Settlement not been achieved, there would remain a significant risk that Lead Plaintiff and the other members of the Settlement Class may have recovered less or nothing from Setting Defendants;

(g)    Plaintiffs' Counsel devoted over 56,000 hours, with a lodestar value of approximately $23 million, to achieve the Settlement; and

(h)    The amount of attorneys' fees awarded and expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

7.    Lead Plaintiff, Public Employees' Retirement System of Mississippi, on behalf of itself and the Office of the Attorney General of the State of Mississippi, is hereby awarded $ 30,350 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

8.    Plaintiff Los Angeles County Employees Retirement Association is hereby awarded $ 16,424 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

9.    Plaintiff Connecticut Carpenters Pension Fund and Connecticut Carpenters Annuity Fund Association is hereby awarded $ 3,375 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

10.    Plaintiff Wyoming State Treasurer is hereby awarded $ 12,255 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

11.    Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees or expense application shall in no way disturb or affect the finality of the Order and Final Judgment entered with respect to the Settlement.

4

12.    Exclusive jurisdiction is hereby retained over the parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

13.    In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation and shall be vacated in accordance with terms of the Stipulation.

14.    There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this ___7th___ day of ___May___, 2012.

_____
HONORABLE JED S. RAKOFF
UNITED STATES DISTRICT JUDGE

#624964

5